RICHARD D. FRAME et al., Respondents-Appellants, v HORIZONS WINE & CHEESE, LTD., Appellant-Respondent.

Second Department, October 11, 1983

APPEARANCES OF COUNSEL

*Anthony N. Del Rosso, P. C.,* for appellant-respondent.

*Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P. C.* (*Steven L. Herrick* of counsel; *John M. Armentano* and *Dolores Fredrich* on the brief), for respondents-appellants.

OPINION OF THE COURT

*Per Curiam.*

Pursuant to a lease dated December 1, 1978, the defendant, Horizons Wine & Cheese, Ltd., leased a building and adjoining parking lot from the plaintiffs for five years, for the purpose of operating a bar and grill. The plaintiff landlords agreed to make all needed structural repairs to exterior walls, and plumbing or heating systems or components, unless occasioned by the fault or neglect of the defendant tenant, and further agreed to repair existing potholes in the parking lot on the premises. The defendant tenant claims that it immediately encountered problems with the heating system, which caused the pipes in the lavatories to freeze twice in the winter of 1979-1980. The tenant further claims that existing potholes in the rear of the parking lot were never repaired.

On or about October 1, 1979, the Superintendent of the Building Department of the Village of Mineola advised plaintiff Richard Frame, *inter alia,* that the west wall of the building on the subject premises had to be repaired or replaced, and that all holes in the parking lot had to be repaired. After repairs to the west wall were purportedly completed, the superintendent informed plaintiff Richard Frame that "[r]epairs made to the wall are unsatisfactory and do nothing with regards to structual [*sic*] integrity". On or about December 25, 1979, the tenant reiterated its complaints to the landlords with respect to the heating system.

The dispute between the parties ultimately resulted in a proceeding in the Nassau County District Court. On March 16, 1981 District Court Judge DONALD E. BELFI directed that the rent for December, 1980 and January, 1981, which the tenant had deposited in the court, be "returned forthwith" to the landlords. Judge BELFI further directed the tenant to pay the rent then due and owing for February

and March, 1981 to its attorney, to be held in escrow, pending structural repairs by the landlords.

Meanwhile, the Superintendent of the Building Department of the Village of Mineola inspected the premises on March 3 and March 6, 1981, and roped off the area of the dining room adjacent to the defective west wall of the building. The repairs were not completed, and on May 14, 1981, the chimney annexed to the west wall collapsed. On May 14, 1981, the occupancy of the building was prohibited by order of the Justice Court of the Incorporated Village of Mineola.

By letter dated May 15, 1981, the landlords notified the tenant that they were terminating the lease, as of May 29, 1981, based upon the latter's breach of the lease. On May 18, 1981, Judge BELFI noted that the parties had been unable to reach a settlement and dismissed the proceedings before him without prejudice to the institution of a new proceeding to recover outstanding rent.

By order of the Justice Court of the Incorporated Village of Mineola the tenant was permitted to reopen the premises on May 22, 1981 on condition that it close off the portion of the building adjacent to the west wall. In addition, the area of the parking lot adjacent to the west wall was closed to the public.

In July, 1981, the landlords commenced the instant action (1) to declare "defendant's right as a tenant in the subject premises to have been terminated as of May 30, 1981", (2) to recover the rent due for February 1, 1981 until May 30, 1981, (3) to recover for use and occupancy after May 30, 1981, (4) to recover moneys allegedly due under the lease for taxes, and (5) for a direction that the tenant be ejected from its possession of the property. The tenant pleaded the landlords' failure to make structural repairs to the subject premises as an affirmative defense to their action, and counterclaimed for damages arising out of the landlords' breach of their covenant to make structural repairs.

The action proceeded to trial before a jury. At the conclusion of the evidence, the trial court instructed the jury, *inter alia:*

"The law is well settled that an actual though only partial eviction by an act of the landlord suspends the entire rent, so long as the partial eviction continues, unless the parties have agreed otherwise, since the landlord cannot apportion his wrong. This is true even though the tenant remains in possession, provided the tenant disputes his liability for such rent. This rule of suspension of rent applies only to an actual partial eviction, and not to a constructive eviction, since a necessary element of a constructive eviction is a surrender of the rented premises. In the case of an actual partial eviction by a landlord, the landlord may not recover for the use and occupation of the remaining part occupied by the tenant.

"However, where the tenant elects to proceed upon his counterclaim for the alleged actual partial eviction, he waives such eviction as a defense in an action for rent."

The jury was asked to render a special verdict with respect to 24 separate interrogatories. Initially, they came in with a verdict, which, *inter alia,* (1) found that there was no agreement between the landlords and the tenant that the latter should pay rent for the period beginning February, 1981 and thereafter to its attorney in escrow; (2) found that the tenant failed to pay the rent pursuant to the terms of the lease; (3) found that the landlords were not justified in terminating the lease by written notice dated May 15, 1981; (4) found that the tenant owed rent for April through October, 1981; (5) found that the landlords were not entitled to possession of the subject premises as a result of the tenant's breach of the terms of the lease; and (6) found that the landlords failed to make structural repairs to the premises as required by the lease, depriving the tenant of the use and occupancy of the premises from May 14, 1981 to May 22, 1981, and, thereafter the use of 3,333 square feet of the premises.

The trial court ruled that the jury's finding that rent was due and owing to the landlords, and that there was no agreement between the landlords and the tenant to put that rent in escrow, was tantamount to a finding that the tenant was guilty of a material breach of the lease. Therefore, the jury was instructed that those findings were inconsistent with their findings that the landlords were

not justified in terminating the lease and were not entitled to possession of the subject premises as a result of the tenant's breach of the terms of the lease. After further deliberations, the jury found, contrary to its initial findings, that the landlords were justified in terminating the lease by written notice dated May 15, 1981, due to the tenant's breach of the lease, and, further, that the landlords were entitled to possession of the subject premises as a result of the tenant's breach of the lease.

■ In our view, the jury's initial verdict, examined in conjunction with the trial court's instructions to the jury, was not inconsistent. Therefore, its findings that the landlords were not justified in terminating the lease by the written notice dated May 15, 1981, and were not entitled to possession of the subject premises should be reinstated. Although the parties did not agree that the tenant should pay rent to his attorney in escrow, the tenant did so pursuant to a court order issued by Judge BELFI.

The landlords assert that that order was rendered a "nullity" on May 18, 1981, when Judge BELFI dismissed the proceedings before him, and that the tenant was guilty of a material breach of the lease, *nunc pro tunc* to February, 1981. This contention defies logic and basic principles of fairness and justice. The tenant's compliance with a court order cannot be deemed a material breach of the lease.

It is clear from the record that as of May 15, 1981, when plaintiffs issued their notice of termination of the lease, defendant was physically ousted from a substantial part of the premises. Indeed, the judgment appealed from provides that there was a "partial eviction". It is established that in a case of partial actual eviction, "liability for all rent is suspended although the tenant remains in possession of the portion of the premises from which he was not evicted" (see *Barash v Pennsylvania Term. Real Estate Corp.*, 26 NY2d 77, 83). Nevertheless the tenant's refusal to pay rent constitutes an election of remedies, and the tenant has no claim for damages (see 2 Rasch, NY Landlord & Tenant, Summary Proceedings [2d ed], § 983; *Peerless Candy Co. v Halbreich*, 125 Misc 889). In this case, the jury was instructed that "where the tenant elects to proceed upon his counterclaim for damages for an alleged actual partial

eviction, he thereby waives such eviction as a defense in an action for rent". This instruction stated the inverse of the applicable law, and casts doubt on the validity of the jury's awards of rent, and taxes allegedly due as additional rent, as well as the jury's award of damages on the tenant's counterclaims. Therefore a new trial is granted with respect to the amount of rent due and owing to the plaintiff landlords, and with respect to the defendant tenant's counterclaims.

At the new trial, the jury should be asked to make a determination as to when the partial actual eviction occurred. With respect to the months prior to the partial actual eviction, the tenant is liable for any unpaid rent, or taxes due as additional rent, but may claim damages. With respect to the month when the partial actual eviction occurred, the tenant is also liable for any rent due at the first of the month, but may claim damages for the proportionate part of the rent attributable to that portion of the premises from which it was evicted, consequential damages, and loss of profits, and the difference between the actual rental value of the portion of the premises from which it was evicted and the proportionate part of the rent attributable to that portion, if any (see *Peerless Candy Co. v Halbreich, supra*). For the months subsequent to the partial actual eviction, the tenant has elected its remedies, and is entitled to no damages.

Since there must be a new trial, we note that the testimony of William Farrand, a business broker, to the effect that if the premises were in good condition, it should have grossed $350,000 per year was speculative in nature, and would be inadmissible at that trial (see 2 Rasch, NY Landlord & Tenant, Summary Proceedings [2d ed], § 590).

■ Finally, we note that the tenant is not entitled to punitive damages, because its claims are for breach of contract (see *Garrity v Lyle Stuart, Inc.,* 40 NY2d 354, 358). It is apparent from this record that the landlords were in breach of the lease from its inception, and should never have leased the premises, considering its condition. Nevertheless, what is involved is merely a private wrong, for which punitive damages are not available.

We have considered the other contentions of the parties on the appeal and cross appeal from the judgment and find that they lack merit.

Accordingly, the judgment appealed from should be reversed, on the law and as an exercise of discretion, the initial answers of the jury to interrogatories numbered 8 and 12 should be reinstated, it should be declared that the landlords were not justified in terminating the lease by their written notice dated May 15, 1981, that the tenant did not commit a material breach of the lease, and that the landlords are not therefore entitled to possession of the premises, the landlords' first, fourth and fifth causes of action should be dismissed, the answers of the jury to interrogatories numbered 9, 10, 11, 15, 20, 22, 23 and 24 should be vacated and the matter should be remitted for a new trial on the landlords' second and third causes of action and the tenant's counterclaims in accordance herewith. The jury's findings of fact in its initial answers to interrogatories numbered 8 and 12 and its answers to interrogatories numbered 1, 2, 3, 4, 5, 6, the addendum to interrogatory number 6, 7, 13, 14, 16, 17, 18, 19 and 21, should be affirmed. The order of the court entered September 9, 1982, should be vacated, and the appeals from the two orders dated August 31, 1982, should be dismissed as academic in light of the determination on the appeal and cross appeal from the judgment.

DAMIANI, J. P., TITONE, MANGANO and GIBBONS, JJ., concur.

Judgment reversed, on the law and as an exercise of discretion, the initial answers of the jury to interrogatories numbered 8 and 12 are reinstated, it is declared that the plaintiff landlords were not justified in terminating the lease by their written notice dated May 15, 1981, that the defendant tenant did not commit a material breach of the lease, and that the plaintiff landlords are not therefore entitled to possession of the premises, the plaintiffs' first, fourth and fifth causes of action are dismissed, the answers of the jury to interrogatories numbered 9, 10, 11, 15, 20, 22, 23 and 24 are vacated, and the matter is remitted to the Supreme Court, Nassau County, for a new trial on plaintiffs' second and third causes of action and defendant's

counterclaims, in accordance herewith. The jury's findings of fact in its initial answers to interrogatories numbered 8 and 12 and its answers to interrogatories numbered 1, 2, 3, 4, 5, 6, the addendum to interrogatory 6, 7, 13, 14, 16, 17, 18, 19 and 21 are affirmed. The order of the same court, entered September 9, 1982, "to compel delivery of possession", is vacated.

Appeals from the two orders dated August 31, 1982 dismissed as academic in view of the determination on the appeal and cross appeal from the judgment.

Defendant is awarded one bill of costs.