■ MORAD GHADAMIAN, Appellant-Respondent, v WALTER CHANNING, Respondent-Appellant, et al., Defendants. [742 NYS2d 632] —Order, Supreme Court, New York County (Alice Schlesinger, J.), entered December 20, 2000, which denied defendant-tenant's motion for summary judgment on his

counterclaims, and also denied plaintiff-landlord's cross motion for partial summary judgment dismissing those counterclaims based on retaliatory eviction and for punitive damages, unanimously modified, on the law, plaintiff's cross motion granted, the challenged counterclaims dismissed, and otherwise affirmed, without costs.

The tenant has had a long history with these premises. In 1972 he signed a six-year lease with plaintiff's predecessor landlord for a "rear house" in the courtyard behind a five-story residential building on East 26th Street in Manhattan. Access to the leasehold parcel was through the lobby and a hallway in the front building. The lease also covered half of a cellar, which is apparently connected by a passageway to the basement of the front building, although the certificates of occupancy have never permitted that level to be used for living quarters in either building. The rent was set at $500 per month for the first two years, with monthly increases of $125 and $100 scheduled for the succeeding biennial periods.

Plaintiff purchased the property in 1974, and obtained approval for late enrollment of the front building for rent stabilization in 1980. Even though the rear building was not subject to rent stabilization or rent control, there is no indication that the tenant paid more than $500 per month in rent during the remainder of the lease that expired in 1978, or indeed at any time during his continuous occupancy since then. A holdover proceeding by the landlord in 1983 brought a Civil Court ruling that the premises in question were part of a horizontal dwelling unit with the front building, and thus subject to rent stabilization. Dismissal of that proceeding was without prejudice to the landlord's claim that the tenant was nonetheless illegally occupying part of the premises.

Fifteen years later, the landlord registered the rear premises independently under rent stabilization and offered a one-year, rent-stabilized lease, with the base rent still at $500 per month. During that filing, the landlord discovered that all these years, he had been paying this tenant's electricity bills, without any formal obligation to do so; the Division of Housing and Community Renewal issued an order in 1999, requiring the tenant henceforth to pay for his own electricity.

Meanwhile, plaintiff brought the instant action, primarily seeking eviction for the tenant's refusal to sign the proffered lease, and for refusing plaintiff access for inspection and alteration. The complaint also charged defendant with using the basement level for living quarters, in violation of the certificate of occupancy, and sought an injunction to preclude such illegal use.

In February 2000, Supreme Court granted the tenant's motion to dismiss these causes of action on the ground that plaintiff's proffered lease differed materially from the terms of the recently introduced 1972 lease (viz., omitting the tenant's right to use half of the cellar and to make unilateral alterations), and also granted the tenant leave to amend his answer to assert a counterclaim for retaliatory eviction. The tenant then moved for summary judgment on his counterclaims, citing harassment and breach of the covenant of quiet enjoyment. He also sought a declaration that his premises included the courtyard, the hallway from the lobby of the front building, half of the front building's basement and the underground passageway, and an injunction requiring plaintiff to make all necessary alterations to the basement and amend the certificate of occupancy to conform with his use of that portion for sleeping purposes. Finally, the tenant demanded attorneys' fees and sanctions. Plaintiff cross-moved for partial summary judgment dismissing the counterclaims for retaliatory eviction and punitive damages.

The tenant's motion for summary judgment on his counterclaims for partial eviction, breach of the warranty of habitability, harassment and injunctive relief was properly denied. The first, second and fourth depend on entitlement to portions of the basement level, for which there are clearly issues of fact. The harassment claim alleges that plaintiff actually or constructively took that portion of the premises from the tenant by proffering a lease that made no mention of such area. At the very best, this also rests on resolution of issues of fact.

The counterclaims that were the subject of plaintiff's cross motion for partial summary judgment are clearly without merit. The tenant's counterclaim for retaliatory eviction is based on the allegation that plaintiff has known—perhaps since 1974, but certainly since at least 1983, when it brought the holdover proceeding—of a pre-existing lease, and tried to impose a less favorable lease by its recent proffer. Plaintiff counters, just as forcefully, that he did not know of the 1972 lease (which, at the very least, would have been earning him more than $500 per month in rent since 1974), and that enforcement of the law (i.e., insisting that the tenant conform to the certificate of occupancy) cannot be considered retaliation.

Real Property Law § 223-b prohibits a landlord from suing to recover real property from a tenant who, inter alia, has acted in good faith to secure or enforce his rights under a lease. Throughout the lease negotiations between these parties, the tenant has never argued for the rights to which he claimed

entitlement under the 1972 lease, nor even made reference to that lease. Instead, he sought rights that exceeded the specific parameters of that lease, viz., exclusive use of the courtyard and the underground passageway, amendment to the certificate of occupancy to validate his illegal use of the basement level as living quarters, and the landlord's assumption of the obligation to pay for electricity. At one point in the negotiations he even sought a 10-year lease, which plaintiff rejected. In fact, the 1972 lease, on which the tenant now relies, did not appear in this dispute until introduced by the tenant in the course of this litigation. Under these circumstances, the counterclaim for retaliatory eviction should have been dismissed as a matter of law.

Similarly, there is no basis for punitive damages here. The counterclaim alleges no more than a private wrong, for which an exemplary award is unavailable (*Frame v Horizons Wine & Cheese*, 95 AD2d 514). Concur—Nardelli, J.P., Sullivan, Wallach and Rubin, JJ.