26 N.Y.2d 77 (1970)
Seymour Barash, Respondent,
v.
Pennsylvania Terminal Real Estate Corporation, Appellant.
Court of Appeals of the State of New York.
Argued November 25, 1969.
Decided January 14, 1970.
Max Freund and Joseph Zuckerman for appellant.
William Rigler and Arthur Goodstein for respondent.
Harold J. Treanor and William F. Treanor for Real Estate Board of New York, Inc., amicus curiae.
Judges BURKE, SCILEPPI, BERGAN, JASEN and GIBSON concur with Judge BREITEL; Chief Judge FULD dissents in part and votes to affirm so much of the order appealed from as sustains the second cause of action, in a memorandum.
*80 BREITEL, J.
Defendant landlord appeals from an affirmed order denying its motion to dismiss tenant's complaint for legal insufficiency (CPLR 3211, subd. [a], par. 7). The allegations for this purpose are accepted as true (Cohn v. Lionel Corp., 21 N Y 2d 559, 562).
The first cause of action, alleging a partial actual eviction, is to relieve tenant from payment of rent, and, notably, is not a claim for damages. The second is for reformation of the lease to conform to alleged prior oral agreements.
With respect to the first cause of action, the question is whether landlord's allegedly wrongful failure to supply a continuous flow of fresh air on evenings and weekends to offices leased by tenant constitutes a partial actual eviction relieving tenant from the payment of rent or, at the most, a constructive *81 eviction requiring the tenant to abandon the premises before he may be relieved of the duty to pay rent. Also at issue is whether grounds for reformation are pleaded by the second cause of action.
Plaintiff, a lawyer, alleges that on September 15, 1967, while the premises known as 2 Pennsylvania Plaza in New York City were being constructed, he entered into a written lease with defendant landlord for rental of office space to be used for the practice of law. Involved is a 29-story glass-enclosed, completely air-conditioned office building. Its windows are sealed and the supply and circulation of air inside the building is under the landlord's exclusive control.
Defendant landlord, through its authorized renting agents, had represented that the building would be open 24 hours a day, 7 days each week, to enable tenants and others to occupy the offices at all times. Prior to signing the lease, plaintiff inquired as to the manner in which air would be circulated "when the air-conditioning system was not in operation." He was informed, fraudulently he alleges, "that the offices in question would be constructed with a duct system, which would always provide a natural and continuous flow of air * * * [making] the offices * * * comfortable and usable at all evening hours and also on weekends, even when the air-conditioning and heating systems were not in operation." The tenant, on the basis of these representations, known by the landlord to be false, signed the lease.
The lease provides, in pertinent part: "As long as Tenant is not in default under any of the covenants of this lease Landlord shall furnish air cooling during the months of June, July, August and September on business days from 9 A.M. to 6 P.M. when in the judgment of the Landlord it may be required for the comfortable occupancy of the demised premises and at other times during business days and similar hours, ventilate the demised premises."
The lease also contains a general merger clause: "Landlord or Landlord's agents have made no representations or promises with respect to said building, the land upon which it is erected or the demised premises except as herein expressly set forth and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth herein. *82 The taking possession of the demised premises by Tenant shall be conclusive evidence, as against Tenant, that Tenant accepts the same, `as is' and that said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken."
Plaintiff tenant took possession on May 15, 1968 and that evening at 6:00 P.M. defendant "turned off all air" in the offices. By 7:00 P.M. the offices became "hot, stuffy, and unusable and uninhabitable". Upon protest the landlord refused to provide afterhour ventilation unless paid for by the tenant at a rate of $25 per hour. The tenant refused to pay the reserved rent or the additional charge and brought the instant action. The landlord sought dispossession for the nonpayment. This was denied, but the tenant was directed to pay rent into court pending the outcome of the instant action.
The first cause of action, based on the unreformed lease, alleges a partial actual eviction. Even assuming that the leased premises became "hot, stuffy, and unusable and uninhabitable" so that no one was able to work or remain in the offices after 7:00 P.M., these allegations are insufficient, as a matter of law, to make out an actual eviction.
To be an eviction, constructive or actual, there must be a wrongful act by the landlord which deprives the tenant of the beneficial enjoyment or actual possession of the demised premises (Edgerton v. Page, 20 N.Y. 281; 1 Rasch, Landlord and Tenant, § 849). Of course, the tenant must have been deprived of something to which he was entitled under or by virtue of the lease (52 C. J. S., Landlord & Tenant, § 477, p. 292). A right to 24-hour ventilation cannot be established, in the absence of reformation of the lease, by alleging fraudulent representations concerning ventilation when the lease itself expressly limits ventilation rights.
But even if the lease were to be read to include the allegations concerning ventilation (the gravamen of the tenant's second cause of action in reformation), the facts alleged, and accepted as true, would still fall short of, and not constitute, an actual eviction.
An actual eviction occurs only when the landlord wrongfully ousts the tenant from physical possession of the leased premises. There must be a physical expulsion or exclusion (Fifth Ave. Bldg. Co. v. Kernochan, 221 N.Y. 370; *83 2 McAdam, Landlord and Tenant [5th ed.], § 329, p. 1391; 1 N. Y. Law of Landlord and Tenant [Edward Thompson Co.], § 250. And where the tenant is ousted from a portion of the demised premises, the eviction is actual, even if only partial (Fifth Ave. Bldg. Co. v. Kernochan, supra; 524 West End Ave. v. Rawak, 125 Misc. 862).
Thus, for example, where the landlord barred the tenant from entering the premises it has been held a partial actual eviction (Lawrence v. Denham Co., 58 Misc. 543 [App. Term]; 2 McAdam, op. cit., supra, § 332, p. 1410). Similarly, where the landlord changes the lock, or padlocks the door, there is an actual eviction (see Lester v. Griffin, 57 Misc. 628 [App. Term]; Morgan v. Short, 13 Misc. 279).
On the other hand, constructive eviction exists where, although there has been no physical expulsion or exclusion of the tenant, the landlord's wrongful acts substantially and materially deprive the tenant of the beneficial use and enjoyment of the premises (City of New York v. Pike Realty Corp., 247 N.Y. 245; Ann.  Nonhabitability of Leased Dwellings, 4 A. L. R. 1453, 1461-1463, supp. 29 A. L. R. 52, supp. 34 A. L. R. 711; 1 Rasch, op. cit., supra, §§ 871-875). The tenant, however, must abandon possession in order to claim that there was a constructive eviction (Boreel v. Lawton, 90 N.Y. 293, 297; Two Rector St. Corp. v. Bein, 226 App. Div. 73, 76; 1 N. Y. Law of Landlord and Tenant [Edward Thompson Co.], supra, § 253).
Thus, where the tenant remains in possession of the demised premises there can be no constructive eviction (Edgerton v. Page, 20 N.Y. 281, 284, supra). It has been said to be inequitable for the tenant to claim substantial interference with the beneficial enjoyment of his property and remain in possession without payment of rent (City of New York v. Pike Realty Corp., supra, 247 N. Y., at p. 247; Edgerton v. Page, supra).
In the case of actual eviction, even where the tenant is only partially evicted, liability for all rent is suspended although the tenant remains in possession of the portion of the premises from which he was not evicted. In the leading case of Fifth Ave. Bldg. Co. v. Kernochan (221 N.Y. 370, 373, supra), the court stated: "We are dealing now with an eviction which is actual and not constructive. If such an eviction, though partial only, *84 is the act of the landlord, it suspends the entire rent because the landlord is not permitted to apportion his own wrong."
This then presents the nub of the appeal. The tenant, who has not abandoned the premises, asserts that there has been an actual eviction, though partial only, thus permitting him to retain possession of the premises without liability for rent. To support this contention it is claimed that failure to supply fresh air constitutes actual eviction, if only, albeit, during the hours after 6:00 P.M. and on weekends.
There is no previous known reported case involving a like situation in a substantially sealed building. The resolution of this appeal turns therefore on the application of general principles to the novel complex of facts presented.
All that tenant suffered was a substantial diminution in the extent to which he could beneficially enjoy the premises. Although possibly more pronounced, tenant's situation is analogous to cases where there is a persistent offensive odor, harmful to health, arising from a noxious gas (Tallman v. Murphy, 120 N.Y. 345), an open sewer (Sully v. Schmitt, 147 N.Y. 248), or defective plumbing (Lathers v. Coates, 18 Misc. 231 [App. Term]). The possible odor-producing causes are innumerable (see, generally, 1 Rasch, op. cit., supra, § 891). In all such cases there has been held to be only a constructive eviction.
In the Tallman case (supra), which involved coal gas, the court stated: "In such a building as the one under consideration there is very much that remains under the charge and control of the landlord * * * [I]f he persistently neglects them, and, by reason of such neglect * * * his apartments are filled with gas or foul odors * * * and the apartments become unfit for occupancy, the tenant is deprived of the beneficial enjoyment thereof * * * and there is a constructive eviction" (id., at p. 352).
Given these well-established rules, proper characterization of the instant failure to ventilate follows easily, assuming there be such duty under the lease as written, or as reformed to conform to the representations. The tenant has neither been expelled nor excluded from the premises, nor has the landlord seized a portion of the premises for his own use or that of another. He has, by his alleged wrongful failure to provide *85 proper ventilation, substantially reduced the beneficial use of the premises.
As long as the tenant remains in possession it matters little whether he can remedy the situation by his independent action. Nor does it matter whether the proposed 24-hour use has become practically impossible. In City of New York v. Pike Realty Corp. (supra), the land was leased from the city for construction of a parking garage. The city, however, thereafter refused to give tenant a building permit. The court held this refusal "was at most a * * * constructive eviction" (id., at p. 247).
Tenant's reliance on Schulte Realty Co. v. Pulvino (179 N. Y. S. 371 [App. Term, per LEHMAN, J.]), which held that a tenant had suffered a partial actual eviction, is misplaced. The landlord, in that case, interfered with tenant's "easement" of light and air by allowing another to cover a large portion of an air-shaft upon which tenant's windows opened. The court, relying on Adolphi v. Inglima (130 N. Y. S. 130 [App. Term]), held that the lease included a right to light and air from the shaftway, and that there was, therefore, a partial eviction. It was observed that there could be no constructive eviction because the premises had not been rendered untenantable. In the Adolphi case a landlord had sealed up a window on the tenant's premises, and it was said to justify a finding of a partial eviction. On the other hand, in Solomon v. Fantozzi (43 Misc. 61 [App. Term]) the court held that blocking the ventilation of a water closet did not constitute a partial constructive eviction, let alone a partial actual eviction. The distinguishing feature of these cases, if indeed they be not anomalies, is that they deal with the destruction of an easement or appurtenance of light and air granted by the landlord (1 Rasch, op. cit., supra, § 895). Here there is no claim to an appurtenant right to air external to the demised premises but rather the failure to provide an essential service within the demised premises, which failure traditionally constitutes a constructive eviction (Tallman v. Murphy, supra).
It would seem moreover, apart from or despite the cases last discussed, that interference with easements or appurtenances of light and air insofar as they diminish the tenant's beneficial *86 enjoyment of the demised premises, constitutes a constructive and not an actual eviction. Thus in Two Rector St. Corp. v. Bein (226 App. Div. 73, supra) the substantial "diminution of light, air and view" constituted at most a constructive eviction requiring a surrender by the tenant (id., at pp. 75-76). (See, generally, 52 C. J. S., Landlord & Tenant, § 458, p. 312.)
Since the eviction, if any, is constructive and not actual, the tenant's failure to abandon the premises makes the first cause of action insufficient in law (33 N. Y. Jur., Landlord & Tenant, § 170, and cases cited). The first cause of action, therefore, should have been dismissed.
Tenant, in his second cause of action for reformation, repeats all the allegations made in support of his first cause of action. He adds, however, that the lease as signed "does not reflect the actual and total agreement of/and between the parties, and the lease was incorrectly drawn regarding the defendant's representations and warranties as to the `continuous flow of air' and `usability of the said offices in the evenings and weekends'." He further alleges that these fraudulent representations induced the execution of the lease.
It is argued that because of the fraud of the landlord plus the unilateral mistake of the tenant, an agreement intended to be a part of the written lease was omitted. To be sure, this constitutes the classic case for reformation (Welles v. Yates, 44 N.Y. 525, 529; see, also, Metzger v. Aetna Ins. Co., 227 N.Y. 411, 417; 6 N. Y. Jur., Reformation of Instruments, §§ 47, 48). The presence of the general merger clause does not bar the introduction of the parol evidence of fraudulent representations in actions to rescind a contract (Sabo v. Delman, 3 N Y 2d 155, 161; Carlinger v. Carlinger, 21 A D 2d 656). So, too, a general merger clause does not bar an action to reform a contract, which by reason of fraud and mistake does not contain the agreement of the parties (Brandwein v. Provident Mut. Life Ins. Co., 3 N Y 2d 491, 495-496).
The rule of Fogelson v. Rackfay Constr. Co. (300 N.Y. 334, 340) is inapplicable since in that case there was no allegation of fraud. Also, since the merger clause in this case is a general one, the limited exception in cases of specific merger clauses does not control (see Danann Realty Corp. v. Harris, 5 N Y 2d 317, 320-321).
*87 However, the fatal defect in the second cause of action is tenant's failure to allege that there was a unilateral mistake on his part. All that is pleaded is that "the lease was incorrectly drawn". It does not appear from this ambiguous and conclusory allegation that the pleader is alleging unilateral mistake, an essential element in an action for reformation based on another's fraud. So critical a fact should be made express and clear if it indeed is present in the action. Therefore, this cause of action should be dismissed.
Although it is necessary to dismiss the complaint because neither cause of action is legally sufficient, plaintiff may wish to move for permission to replead. The record does not reveal that plaintiff sought leave to replead in the event that the motion to dismiss was granted. Consequently, plaintiff may not be granted leave to replead based on the present state of the record (see CPLR 3211, subd. [e]).
Accordingly, the order of the Appellate Division should be reversed, the question certified answered in the negative, with costs to abide the ultimate event, the complaint dismissed, but with leave to plaintiff tenant to apply at Special Term for leave to replead, if so advised.
Chief Judge FULD (dissenting in part).
I agree with the court's opinion that a plaintiff, in order to state a sufficient cause of action for reformation, must allege fraud by the defendant and unilateral mistake on his own part. The plaintiff before us has, concededly, pleaded fraud and it seems to me that his allegation that "the lease was incorrectly drawn" is the equivalent of an assertion that he was under a mistake when he signed the lease. Our rules of pleading have never demanded the use of particular or magic words as long as the language employed conveys the requisite meaning. In the present case, only insistence on an excessive technicality can justify dismissal of the second cause of action. I would, therefore, affirm so much of the order appealed from as sustains that count.
Order reversed and the case remitted to Special Term for further proceedings in accordance with the opinion herein, with costs to abide the ultimate event. Question certified answered in the negative.