*24 OPINION OF THE COURT
Per Curiam.
Order entered November 6, 1985 is reversed, with $10 costs, the petition is reinstated and final judgment of possession is awarded in favor of the landlord in the amount of $46,340.17.
In this nonpayment proceeding to recover the subject commercial premises, tenant’s defense is that the 10-year lease between the parties, which commenced on April 17, 1980, was terminated sometime between September 30, 1983 and October 30, 1983, when landlord evicted tenant by changing the locks to the premises and making structural alterations to the premises without tenant’s permission. On or about June 21,
1983, the parties entered into a written agreement which provided, inter alia, that on or prior to the "possession date”, which was defined as the date a new lease was entered into between landlord and a third party as tenant, tenant shall surrender the premises to landlord and upon the "cancellation date”, defined as the date the new third-party tenant starts to pay rent, the present tenant’s lease shall expire and its obligation to pay rent shall cease; until a new third-party tenant was obtained and paid rent, tenant was to remain liable under the lease.
On September 30, 1983, tenant voluntarily ceased operations at the premises and so notified landlord; in accordance therewith, furniture was moved out, telephone service was discontinued and the postal service was advised to forward mail. However, pursuant to the agreement, tenant continued to pay rent. Because the June agreement contemplated landlord’s showing the premises to prospective tenants, shortly after tenant ceased operations, landlord changed the locks on the premises to accommodate a master key in order to show the premises with other vacant spaces in the building. While a former employee of tenant, attempting to retrieve personal belongings, discovered that the locks had been changed in October 1983, she did not so inform tenant until November of
1984.
In or about November 1984, when it became apparent that prospective tenants were uninterested in renting the premises, landlord undertook, at its own expense, to renovate and modernize the premises. The original windows, which could not be opened and were leaking, were replaced with modern windows and old cast iron radiators were enclosed in a steel material. On November 5, 1984, landlord’s agent wrote to *25 tenant advising tenant that new windows and radiator enclosures were being installed at landlord’s sole cost and expense. Representatives of tenant thereupon visited the premises and found that tiles were missing and there were silicone drippings on the wall and floor. Thereupon, on November 30, 1984, tenant wrote to the landlord, noting that the locks had been changed and the premises was left in an "untenantable condition”, claiming that the acts constituted an eviction and stating that tenant recognized no further obligation to landlord under the lease. On December 11, 1984, landlord’s counsel responded, stating that the improvements were made in furtherance of the June 21, 1983 agreement and were in tenant’s best interest. On January 30, 1985, landlord sent tenant a key to the premises. Tenant, abiding by its position that an eviction had occurred, returned the key and the unopened February rent bill.
Civil Court dismissed the petition, holding that landlord’s changing the locks "for its own convenience without providing a key to the tenant, nor even advising it or seeking its consent” constituted an eviction. Moreover, the court held that the installation of the new windows and radiators without tenant’s consent left the premises in an unusable condition and also constituted an eviction.
Although it has been held that a landlord’s changing of locks on premises, whether tenant is in occupancy or not, constitutes an actual eviction (Barash v Pennsylvania Term. Real Estate Corp., 26 NY2d 77; Lester v Griffin, 57 Misc 628), invocation of that authority in the instant case would be manifestly unfair. It is clear that the tenant — seeking to be relieved of its obligation under the lease — ceased all operations at the premises and extended to landlord such authority over the premises as would facilitate reletting. The landlord, by exercising that authority in its attempt to secure a new tenant, should not be held to have compromised its right to collect rent under either the April 17, 1980 lease or the June 21,1983 agreement between the parties.
Moreover, article 26 of the April 17, 1980 lease provides: "No act or omission of Lessor or its agents shall constitute an actual or constructive eviction, unless Lessor shall have first received written notice of Lessee’s claim and shall have had a reasonable opportunity to meet such claim”. Under the term of this paragraph no eviction of the tenant could take place in the absence of adequate notice to the landlord affording the landlord a reasonable opportunity to cure the circumstances *26 giving rise to the alleged eviction. While tenant claims that the eviction occurred in October of 1983 when the locks were changed, it is conceded that no written notice was given by tenant to landlord until November 30, 1984. That notice, although referring to the change of the locks, did not contemplate a cure of the acts claimed to constitute an eviction, but rather assumed the alleged eviction to be incurable. In light of the posture adopted by the tenant, landlord’s delay in forwarding the key cannot be deemed unreasonable.
As to the alterations, again referring to the lease, paragraph 18 provides: "Lessor or its agents shall have the right to enter or pass through the demised premises at all times, by master key, by reasonable force or otherwise to examine the same and to make such repairs, alterations or additions as it may deem necessary or desirable to the premises or the building and to take all material in to and upon the premises that may be required thereof. Such entry and work shall not constitute an eviction of Lessee in whole or in part, shall not be the ground for any abatement in rent, and shall impose ho liability on Lessor by reason of inconvenience or injury to Lessee’s business”. Landlord’s actions clearly fall within the spirit of privileges inherent in this provision. Landlord here did not haphazardly break into tenant’s inhabited premises and randomly decide on alterations within; rather, this was a vacant premises which both parties contemplated landlord’s attempting to relet and landlord made substantial improvements therein. The pictures supplied in the record evidence not only that the alterations were improvements but also that only slight but obviously necessary marring of the premises was caused by the work.
Sandifer, J. P., Parness and Ostrau, JJ., concur.