■ CUT-OUTS, INC., Appellant-Respondent, v MAN YUN REAL ESTATE CORP., Respondent-Appellant. [729 NYS2d 107] —Judgment, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered June 9, 2000, which, after a non-jury trial, granted plaintiff tenant judgment in the amount of $24,000, plus interest, and dismissed defendant landlord's counterclaims, unanimously reversed, on the law, with costs, the judgment vacated, the complaint dismissed, and judgment granted to defendant on its counterclaims for unpaid rent and additional rent, together with attorneys' fees, and the matter remanded for an assessment of such amounts and entry of judgment accordingly. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

The evidence at trial established that plaintiff is engaged in the business of die-cutting, mounting and finishing paper products, which involves the use of heavy machinery. For ap-

proximately 39 years, plaintiff occupied the entire seventh floor of defendant's building located at 107-113 Grand Street in Manhattan, pursuant to a series of five-year leases. The last of plaintiff's leases was a modified "Standard Form of Loft Lease," providing for a term commencing on February 1, 1992 and expiring on January 31, 1997. The lease provided for a base rent of $6,000 per month, plus certain additional rent, during the relevant period.

Plaintiff used a loading dock at 32 Mercer Street, around the corner from the building's main entrance, for bringing in materials and sending out finished products. The building had two freight elevators accessed from the loading dock, as well as a manually operated passenger elevator accessed through the front entrance and lobby. The lease contained a provision requiring defendant to "provide passenger elevator service on business days from Monday through Fridays from 8:00 AM to 5:00 PM, and normal business hours on Saturdays. Freight elevator service shall be provided Mondays through Fridays during normal business hours (8:30 AM to 4:30 PM)."

Around the beginning of 1996, defendant advised plaintiff (which was then one of only three tenants remaining in the building, the other two being month-to-month holdovers) that its lease would not be renewed when it expired. At about the same time, defendant began making extensive renovations to the building for the purpose of converting it from light industrial use to office use, including, among other things, replacement of the manually operated passenger elevator with a handicapped-accessible automatic elevator.

By letter dated May 9, 1996, plaintiff's counsel gave defendant notice of various alleged defaults under the lease, and demanded cure. Thereafter, plaintiff did not pay rent for the months of June or July, and vacated the premises in mid-July 1996, more than six months in advance of the expiration of the lease.

Plaintiff subsequently commenced this action in October 1996, asserting causes of action for, *inter alia*, partial actual eviction, constructive eviction, breach of the covenant of quiet enjoyment, breach of contract, and return of plaintiff's $12,000 non-interest bearing security deposit. The complaint alleged that, by reason of defendant's alleged defaults, plaintiff had not been obligated to pay rent for April 1996 or subsequent months, and sought, among other damages, return of the rent plaintiff had paid for the months of April and May 1996. Defendant's answer asserted, *inter alia*, a counterclaim for recovery of the rent due under the lease from June 1996

through January 1997, and requested an award of defendant's attorneys' fees in this action, pursuant to article 19 of the Lease.

After a non-jury trial, the court found that plaintiff had proven both a partial actual eviction and a constructive eviction as of April 1996, and awarded plaintiff damages in the amount of the base rent it had paid for April and May 1996 ($12,000) and return of its $12,000 security deposit, for total damages in the principal amount of $24,000. The court declined to award plaintiff damages for the costs it incurred in relocating its business or its attorneys' fees in this litigation. The court also dismissed all of defendant's counterclaims.

In rendering its decision, however, the trial court neglected to consider or discuss the effect of the exculpatory provisions of the lease, specifically, article 4 ("Repairs"), article 13 ("Access to Premises"), article 20 ("Building Alterations and Management"), and article 31 ("Elevators, Heat, Cleaning"), which defendant invoked in its opening statement at trial and in its post-trial submissions. Those provisions specifically authorized defendant to perform the work in question without incurring liability to plaintiff, and without abating plaintiff's obligation to pay rent. Plaintiff's argument that the exculpatory provisions do not protect acts that would otherwise constitute a partial actual eviction or constructive eviction, if accepted, would largely read them out of the lease.

Plaintiff alleged that it was partially evicted by defendant's taking of a 6-foot by 10-foot portion of the vestibule outside the passenger elevator on plaintiff's floor which was walled off pending the renovation of that elevator. However, such temporary walling off of the elevator is precisely the sort of activity incident to renovation addressed by article 20 ("Building Alterations and Management"), which was plainly intended to preclude technical eviction claims based on such renovation-related temporary encroachments on plaintiff's premises. As for the 2.5-foot-wide vestibule space that defendant's construction manager testified would be permanently taken when the renovation was completed, plaintiff failed to prove that this encroachment constituted anything more than a de minimis taking of inessential space. Any such taking was protected by the terms of article 20, which permits defendant to "change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets or other parts of the building. * * * There shall be no allowance to Tenant for diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business."

Plaintiff also claimed a partial actual eviction as a result of defendant's installation of a new electrical conduit in space within the premises that plaintiff used for storage of its dies. Such installation was clearly protected under article 13, which specifically permits defendant "to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes therein provided, wherever possible, they are within walls or otherwise concealed." Again, plaintiff failed to present any evidence indicating how much space was taken by this conduit, or whether the taking was of any practical significance. (*See, Two Park Ave. Co. v Intermediate Factors Corp.*, 17 Misc 2d 442, 444 ["There was no partial eviction because there was no deprivation of a substantial portion of the demised premises," where landlord installed pipes suspended from tenant's ceiling].)

Most of the other matters on which plaintiff's claim of partial actual eviction is based relate to interference with access to and from the premises. Specifically, due to the renovation work, from April 1996 until plaintiff vacated the premises: the front entrance to the building and the lobby were closed; the passenger elevator was taken out of service; one of the two freight elevators was reserved for construction use only; and the other freight elevator was used for both plaintiff's use and for construction, with priority given to the construction work; the front and back stairways were obstructed by construction materials; and access to the loading docks was impeded by trash, dumpsters and scaffolding.

While defendant's renovations indisputably caused plaintiff substantial inconvenience, involved certain encroachments on the leased premises and caused delays in bringing shipments in and out of the premises, plaintiff does not contend that it was deprived of access to the premises, only that access was slower, less convenient, less pleasant, and more difficult. For example, plaintiff's president admitted that, although "it took a lot more time and effort" (in that trucks had to park about a block away from the loading dock), the obstruction of the loading dock did not prevent freight from coming in or going out.

Such interference with ingress and egress does not amount to partial actual eviction (*see, Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assocs.*, 240 AD2d 161, citing *Barash v Pennsylvania Term. Real Estate Corp.*, 26 NY2d 77, 82-84) and the cases cited by the trial court, dealing with interference with access to demised premises, are distinguishable.

Plaintiff also presented evidence that, at some point after

the front entrance to the building was closed, the lock on the Mercer Street entrance was changed, and plaintiff's president was not given a copy of the new key until two to four days later, after he asked defendant for it. Under the lease, defendant was obligated to provide plaintiff with a copy of the new key to any door to which plaintiff held the previous key. Nevertheless, although defendant arguably breached the lease, plaintiff does not contend that it was deprived of the use of its premises for any substantial period of time as a result of the lack of the key (apparently, the entrance to the building was unlocked each day by defendant's employees) and any breach, therefore, would not constitute an eviction. Also, while defendant failed to immediately provide plaintiff with a new key to the front door on one occasion, such entrance was not in use at the time and, thus, there was no eviction.

Aside from the lease's exculpatory provisions, under the standard stated in *Barash* (*supra*), none of defendant's acts discussed under the rubric of actual partial eviction can pass muster as a constructive eviction. Plaintiff does not contend that its business was ever actually interrupted, or that it lost any business, or otherwise suffered any loss as a result of the renovation work. Indeed, it stipulated prior to trial that it would "not seek damages by reason of lost profits."

In finding that plaintiff had been constructively evicted, the trial court also relied on certain interruptions in the supply of heat to the premises related to an underlying problem with the boiler, which ultimately was replaced after plaintiff left the building. However, most of plaintiff's complaints concerning the lack of heat apparently related to instances during the prior winter, long before it claims to have been evicted as of April 1996. Such heating problems would have had little to do with plaintiff's decision to vacate the premises, which was apparently made around the beginning of the following June, when it stopped paying rent (*see, Barash, supra*, 26 NY2d at 83 ["(W)here the tenant remains in possession of the demised premises there can be no constructive eviction"]).

The trial court also took note, in its discussion of constructive eviction, that the radiator on plaintiff's floor leaked (plaintiff's president testified that the radiator "regularly leak[ed] water across the floor which caused tiles to pop up"). It appears, however, from plaintiff's May 1996 default letter that the referenced leaking (which was alleged to have caused unspecified "water damage to the Premises") occurred during the prior December and January. Again, while the failure to prevent or cure the leaking problem may have constituted a

breach of the lease, it was not proven to have risen to the level of a constructive eviction.

The only other matter referred to by the parties as a possible basis for constructive eviction is the fact that, as part of the renovation work, the wall of the lavatory on plaintiff's floor was opened up to insert new risers, and afterwards was covered up by a piece of sheetrock; the wall was not replastered until after plaintiff vacated the premises. Again, while the ripped-open wall was no doubt aesthetically unpleasing, plaintiff does not contend that it was deprived of the use of the lavatory.

In sum, plaintiff failed to prove either a partial actual eviction or a constructive eviction and, accordingly, the judgment for plaintiff is reversed, judgment granted to defendant on its counterclaims for unpaid rent and additional rent as well as attorneys' fees occasioned by plaintiff's default, to which it is entitled pursuant to article 19 of the lease, and the matter remanded for determination of the amounts due. Concur— Nardelli, J. P., Tom, Andrias, Rubin and Marlow, JJ.