[801 NYS2d 568]

EASTSIDE EXHIBITION CORP., Respondent-Appellant, v 210 East 86th Street Corp., Appellant-Respondent.

First Department, September 15, 2005

APPEARANCES OF COUNSEL

*Kaufman Friedman Plotnicki & Grun, LLP*, New York City (*Howard Grun* of counsel), for appellant-respondent.

*Slotnick, Shapiro & Crocker, LLP*, New York City (*Barry I. Slotnick, J. Lawrence Crocker* and *Elliot J. Blumenthal* of counsel), and *Marcus Rosenberg & Diamond LLP*, New York City (*David Rosenberg* of counsel), for respondent-appellant.

## OPINION OF THE COURT

ELLERIN, J.

The issue before us is whether a commercial tenant whose landlord takes possession of a minimal and nonessential portion of its demised premises is thereby entitled to an abatement of its entire rental obligation.

Plaintiff holds a lease commencing March 1, 1998 and expiring December 16, 2016 on a two-story space configured as a "quad" movie theater in a seven-story retail and office building owned by defendant at 210 East 86th Street in Manhattan. Article 13 of the lease permits defendant to have access to the demised premises at reasonable times to make repairs and improvements, and provides that there be no abatement of rent to plaintiff while such work is in progress or any damages by reason of loss or interruption of business or otherwise. Article 4 provides that there be no allowance to plaintiff for the diminution of rental value and no liability on defendant's part for inconvenience, annoyance or injury to business arising from the making of any repairs or improvements in or to any portion of the building or in or to the demised premises or the fixtures, appurtenances or equipment thereof.

On the street level of the demised premises are a ticket sales booth, a lobby, a concession stand, and two movie theaters. On the second floor are a lobby, an informal seating area, a concession stand, and two additional theaters. The street-level traffic pattern takes patrons from 86th Street down the long side of an L, which is 107 feet long and at some points only 12 feet wide, to the short side of the L, which is approximately 15 feet wide and forms the lobby for the two ground-floor theaters. All patrons enter this way and a majority also exit this way, which causes the space to be crowded at times.

In December 2002, without notice to or consent from plaintiff, defendant entered plaintiff's premises and installed steel floor-to-ceiling cross-bracing between two existing steel columns, in preparation for the construction of two additional stories to the building. On the ground floor, the columns are situated approximately midway between the concession stand and a staircase on one side of the 15-foot-wide lobby and the projection booth wall on the other. The cross-bracing thus occupies space between the two theaters and the concession stand, nearer the entrance to the easterly theater. On the second floor, the cross-bracing displaces a portion of an informal seating area for patrons waiting to enter the upstairs theaters.

In response to defendant's actions, plaintiff ceased paying rent, as a remedy for partial actual eviction (*see Barash v Pennsylvania Term. Real Estate Corp.*, 26 NY2d 77, 83 [1970]), and commenced this action, seeking a permanent injunction barring defendant from doing any further work in the theater and directing defendant to remove what was already done, a full abatement of rent, compensatory damages exceeding $1 million and punitive damages of $3 million.

Defendant then served a notice to cure default for not installing a neutralization tank for spilled soda, for failing to provide books and records, for installing new doors on the upper theaters that violated the Building Code of New York City, and for other items that defendant did not pursue at trial. Plaintiff amended its complaint to include claims for permanent injunctive and declaratory relief preventing defendant from terminating the lease based on the default notice. Defendant then amended its answer to include a counterclaim for attorneys' fees and rent due from January 1, 2003 through September 2003 in the aggregate sum of $633,817, which encompassed the amount of rent arrears as stipulated to by the parties at trial and additional rent owed under the lease that had not been paid since commencement of this action. When the case was originally assigned to Justice Diane Lebedeff, defendant agreed to complete expeditiously the work already begun, and the court granted plaintiff a temporary restraining order as to other construction work. The court also permitted certain work to be completed upon defendant's undertaking that it would reduce the extent of the intrusion and improve safety and that it would remove the work if plaintiff prevailed.

Thereafter, a nonjury trial was held before Justice Edward Lehner, who identified the central issue as whether defendant's

installation of the steel cross-bracing in plaintiff's premises, which deprived plaintiff of the use of approximately 12 square feet of space out of a stipulated total of between 15,000 and 19,000 square feet, constituted "such an actual partial eviction" as to deprive defendant of the right to collect any rent.

The court correctly found that, while the parties' lease permits defendant to enter plaintiff's premises at reasonable hours to make alterations in connection with the addition of two stories to the building, it does not authorize defendant to permanently deprive plaintiff of the use of any portion of the demised premises. Citing *Barash* (26 NY2d at 83), the court recognized that such a deprivation would constitute a partial actual eviction, which would suspend plaintiff's liability for all rent. However, the court found that defendant's alteration to plaintiff's premises is not in an area essential to the operation of plaintiff's business and occupies so small a percentage of the total area as to be de minimis, and concluded that "the taking of a non-essential minute area of space" constitutes an exception to the rule that a partial actual eviction warrants a total rent abatement. Accordingly, the court held that defendant may leave the subject alteration in the demised premises without forgoing the agreed rent.

In support of excepting a de minimis taking from the rule that any unauthorized taking deprives the landlord of the right to collect any rent, the court relied upon four decisions of this Court in which the words "de minimis" and "insubstantial" appear in connection with a taking (*see Cut-Outs, Inc. v Man Yun Real Estate Corp.*, 286 AD2d 258 [2001], *lv denied* 100 NY2d 507 [2003]; *Camatron Sewing Mach. v F.M. Ring Assoc., Inc.*, 179 AD2d 165 [1992]; *Paine & Chriscott v Blair House Assoc.*, 70 AD2d 571 [1979]; *Two Park Ave. Co. v Intermediate Factors Corp.*, 17 Misc 2d 442 [App Term, 1st Dept 1958]). However, the factual underpinnings of these decisions do not support the court's conclusion that this Court has recognized an exception, based on a de minimis taking, to the general rule that an unauthorized taking suspends the obligation to pay rent. On the contrary, in *Camatron*, we permanently enjoined the landlord from commencing a planned alteration because it would have caused a partial taking of the tenant's space. The exculpatory lease provision relied upon by the landlord was limited to the building's public areas and did not authorize the landlord to take any portion of the demised area. In rejecting the landlord's argument, we incidentally took issue with its characterization of the taking as de minimis.

In the other three cases, we found that the complained-of activities were authorized in the respective leases. In *Cut-Outs*, where the parties' lease permitted the owner to change the arrangement and/or location of public entrances, passageways, etc., the tenant failed to prove that the taking of a 2.5-foot-wide vestibule space from its premises constituted "anything more than a de minimis taking of inessential space" (286 AD2d at 260). In *Paine & Chriscott*, the parties' lease permitted the landlord to install pipes and conduits in and through the demised premises as the landlord deemed necessary or desirable. In *Two Park Ave. Co.*, the parties' lease permitted the landlord to install pipes and conduits in the demised premises and to the floors above and below, so long as it resulted only in depriving the tenant of any "insubstantial" part of the demised premises (17 Misc 2d at 443). Thus, we cannot agree that these prior decisions expressly evince a recognition of a de minimis exception to the rule that any unauthorized taking by a landlord of a portion of premises demised to a tenant deprives the landlord of the right to any rent.

In *Fifth Ave. Bldg. Co. v Kernochan* (221 NY 370, 372 [1917]), Judge Cardozo wrote that an eviction suspends the obligation of payment of rent because it "involves a failure of the consideration for which rent is paid," and that an actual eviction, by the landlord, though partial only, "suspends the entire rent because the landlord is not permitted to apportion his own wrong" (at 373). While we are constrained to hold that the instant defendant's alteration of a portion of plaintiff's premises, without authorization and without consent, was, however small, a taking (*see Barash*, 26 NY2d at 82; *Camatron Sewing Mach.*, 179 AD2d at 168), we understand the trial court's reluctance to order the unpalatable remedy of a total rent abatement under the facts of this case, and believe that there is an appropriate remedy short of total rent abatement.

Although we have found no decision that recognizes a de minimis exception to the rule that any unauthorized taking is an actual eviction, there is authority indicating that a more proportionate remedy than a total abatement of the rent may be fashioned for the compensation of a tenant who has been partially evicted (*see Paine & Chriscott*, 70 AD2d at 572 ["To the extent that the pipes and conduits might constitute a partial eviction, this can easily be compensated by money damages"];

*cf. Appliance Giant, Inc. v Columbia 90 Assoc., LLC*, 8 AD3d 932, 933 [2004] [a partially evicted tenant is entitled to recover that part of paid rent attributable to that portion of the premises from which it was evicted]; *81 Franklin Co. v Ginaccini*, 160 AD2d 558, 559 [1990] [same]).

In *Dyett v Pendleton* (8 Cow 727 [1826]), cited by Judge Cardozo in *Fifth Ave. Bldg. Co.* (221 NY at 373), the court explained that the reason even a partial eviction by the landlord discharges the tenant from payment of the whole rent is that " 'no man may be encouraged to injure or disturb his tenant in his possession, whom, by the policy of the feudal law, he ought to protect and defend' " (8 Cow at 731, quoting Gilbert, Essay on Rents, at 145). In light of current landlord/tenant realities and policies, it appears particularly untoward automatically to apply harsh and oppressive strictures derived from feudal law that mirror the policies and concerns of that earlier society. Instead, we conclude that a more realistic remedy than total rent abatement should be imposed for a partial eviction of the minimal proportions here present.

In light of the foregoing, the motion court properly declined to impose the draconian sanction of total abatement of rent for the actual partial eviction. While plaintiff certainly has a grievance, it is one that can and should be compensated by money damages proportionate to the injury involved. Thus, we hold that plaintiff has been partially evicted and is entitled to compensation by way of a partial rent abatement for the injury it has suffered and will continue to suffer as a consequence, and remand for a hearing to determine the extent thereof.

Accordingly, the judgment of the Supreme Court, New York County (Edward H. Lehner, J.), entered May 28, 2004, after a nonjury trial, which dismissed defendant's claims for ejectment and for attorneys' fees and awarded plaintiff declaratory and injunctive relief preventing defendant from terminating plaintiff's lease and holding plaintiff was not in default thereof, and dismissed plaintiff's claims for a permanent injunction and abatement of rent, should be modified, on the law, to the extent of holding that plaintiff is entitled to be compensated for the taking, and otherwise affirmed, without costs, and the matter remanded for a hearing to determine the actual damages.

MAZZARELLI, J.P., SULLIVAN, NARDELLI and WILLIAMS, JJ., concur.

Judgment, Supreme Court, New York County, entered May 28, 2004, modified, on the law, to the extent of holding that plaintiff is entitled to be compensated for the taking, and otherwise affirmed, without costs, and the matter remanded for a hearing to determine the actual damages.