## Colonial Plaza Realty, LLC v Mother & Babies Perinatal Network of S. Cent. N.Y., Inc.

2024 NY Slip Op 33422(U)

September 30, 2024

Supreme Court, Broome County

Docket Number: Index No. EFCA2023001937

Judge: Eugene D. Faughnan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At a Motion Term of the Supreme Court of
the State of New York held in and for the
Sixth Judicial District at the Broome County
Courthouse, Binghamton, New York, on the
12th day of July 2024, on submission.

PRESENT:    HON. EUGENE D. FAUGHNAN
            Justice Presiding

STATE OF NEW YORK
SUPREME COURT: COUNTY OF BROOME

---

COLONIAL PLAZA REALTY, LLC,

                              Plaintiff,          DECISION AND ORDER

            vs.                                   Index No. EFCA2023001937

MOTHER & BABIES PERINATAL
NETWORK OF SOUTH CENTRAL
NEW YORK, INC.,

                              Defendant.

---

Counsel for Plaintiff:                Kimberlee DeFazio, Esq.
                                      Aswad & Ingraham
                                      46 Front St.
                                      Binghamton, New York 13905


Counsel for Defendant:                Robert R. Jones, Esq.
                                      Coughlin & Gerhart, LLP
                                      P.O. Box 2039
                                      Binghamton, NY 13902

<u>**EUGENE D. FAUGHNAN, J.S.C.**</u>

This case involves a landlord-tenant dispute involving commercial property located at 455-457 State Street, Binghamton, NY. The premises were owned by Plaintiff Colonial Plaza Realty LLC (hereinafter "Colonial Realty") and leased to Defendant Mothers & Babies Perinatal Network of South Central New York, Inc. The matter is before the Court to address Plaintiff's motion summary judgment against Defendant and the cross-motion of Defendant for summary judgment and dismissal of the Complaint. There was no oral argument on the motion, and instead it was handled on submission. After due deliberation, this constitutes the Court's Decision and Order.[1]

<u>**BACKGROUND FACTS**</u>

Defendant is a nonprofit organization dedicated to improving pregnancy and birth outcomes and to support the development of individuals and families. This runs the gamut of providing meals, clothing, prenatal classes, postpartum support and many other topics. Defendant used the leased premises to provide a place for members of the community to access the resources Defendant provides.

Plaintiff commenced this action by the filing of a Summons and Complaint on September 7, 2023 listing three causes of action: breach of the lease; declaratory judgment that Defendant is liable for rent payments for the remainder of the lease term; and attorneys fees per the terms of the lease. Defendant filed an Answer on October 30, 2023 with six affirmative defenses including constructive eviction and surrender of possession under RPL § 227. It does not appear that any discovery was undertaken and, instead, the parties are relying on affidavits and exhibits.

Plaintiff filed its motion for summary judgment on April 5, 2024. On May 30, 2024, Defendant filed opposition to the Plaintiff's motion and also filed a cross-motion seeking summary judgment. Thereafter, Plaintiff filed a Reply in further support of its motion, and opposition to Defendant's motion; which was followed by Defendant's Reply.

The underlying facts trace back to the lease entered into between Plaintiff's predecessor-in-interest (Colonial Park Associates) and Defendant on August 8, 2007, which was for ten

---

[1] All the papers filed in connection with the motion and cross-motion are included in the NYSCEF electronic case file.

2

years, ending on August 31, 2017. There were two extensions to the lease. The first extension was for five years and expired on August 31, 2022; the second was for ten years and expires on August 31, 2032. The terms of the original lease were continued in the extensions.

During the course of the second extension, Defendant wrote to Plaintiff on June 23, 2023 advising that it was terminating the lease and would be vacating on July 31, 2023 due to Plaintiff's failure to correct dangerous and hazardous conditions. Defendant contended that the landlord's inaction constituted a breach of the lease and a violation of the implied covenant of habitability and New York State Building Codes.

In support of its motion, Plaintiff submitted an attorney affirmation of Kimberlee N. DeFazio, Esq. and a Memorandum of Law. The affirmation relied upon the exhibits to the Complaint, which were the original lease and two extensions, as well as Defendant's notice to terminate. Plaintiff believes that the terms of the lease and the facts of this case show that Defendant breached the lease. Plaintiff points to Article 33 of the lease which provides:

> Landlord shall be in default in the performance of its obligations hereunder if Landlord shall have failed to perform (or has failed to commence performance of) any obligation within thirty (30) days, (or after reasonable notice to Landlord in the case of an emergency), after written notice by Tenant to Landlord specifying therein exactly what duty Landlord has failed to perform. If Landlord fails to cure the default, Landlord shall be responsible to reimburse Tenant for all of Tenant's costs attributable to Landlord's default.

Plaintiff claims that Defendant did not provide proper notice as required by Article 33 because none of Defendant's communications stated that the landlord had failed to perform a duty but were simply concerns being raised by the Defendant, which Plaintiff indicated it would address. Plaintiff also points out that Article 27 of the lease requires any notices to be in writing and delivered personally or sent by certified mail but none of the communications were by proper methods. The June 23, 2023 letter also failed to allow Plaintiff time to cure a defect, and instead simply indicated that Defendant was terminating the lease. Accordingly, Plaintiff argues that Defendant impermissibly vacated the premises and stopped paying rent, such that Defendant has breached the lease. In addition, Article 23 permits the recovery of attorneys fees and costs to the prevailing party.

In opposition, Defendant filed an affirmation of Robert R. Jones, Esq., dated May 29, 2024, and affirmation of Sharon Chesna (Executive Director of Defendant company) dated May

3

13, 2024, and affirmation of Christine Finch (Director of Perinatal Programs for Defendant), dated May 29, 2024 and an affirmation of Michael P. O'Reilly, a Professional Engineer, who conducted an inspection of the premises and prepared a report dated April 12, 2023 summarizing his findings. Mr. O'Reilly noted variations in floor elevations through the premises and cracks in the wall, as well as floor cracks, joint separation and severe displacement in the exterior walls. Mr. O'Reilly concluded that the structural damages were being caused by the rapid settling of the subgrade of the building, which is expected to continue. He further stated that this was the most significant settling he had ever observed during his career. Ultimately, if settling continues it could lead "to a catastrophic failure of the structural system, and [pose] a serious risk to life and safety inside. (O'Reilly affirmation at ¶ 15). He felt that the premises were not safe for occupancy and that Defendant should re-locate their business. Defendant provided a copy of Mr. O'Reilly's report to Plaintiff on April 19, 2023 and claims that Plaintiff failed to correct the conditions so Defendant decided to advise Plaintiff that it would be vacating the premises. Defendant claims it was entitled to terminate the lease based on constructive eviction. Real Property Law § 227 provides that:

> Where any building, which is leased or occupied, is destroyed or so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he or she is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender. Any rent paid in advance or which may have accrued by the terms of a lease or any other hiring shall be adjusted to the date of such surrender.

Due to the findings in the report of Mr. O'Reilly, Defendant asserts that the property was not fit for occupancy, and therefore, constituted a constructive eviction. Accordingly, Defendant claims it had the right to surrender the premises without liability for ongoing rent payments.

## LEGAL DISCUSSION AND ANALYSIS

When seeking summary judgment, "the movant must establish its prima facie entitlement to judgment as a matter of law by presenting competent evidence that demonstrates the absence of any material issue of fact." *Lacasse v. Sorbello*, 121 AD3d 1241, 1241 (3rd Dept 2014) *citing Alvarez v. Prospect Hosp.*, 68 NY2d 320, 324 (1986) and *Winegrad v. New York Univ. Med. Ctr.*, 64 NY2d 851, 853 (1985) (other citation omitted); *see Amedure v. Standard Furniture Co.*,

4

125 AD2d 170 (3rd Dept. 1987); *Bulger v. Tri-Town Agency, Inc.*, 148 AD2d 44 (3rd Dept. 1989), *app dismissed* 75 NY2d 808 (1990). Such evidence must be tendered in admissible form. *Zuckerman v. City of New York,* 49 NY2d 557 (1980); *Friends of Animals, Inc. v. Associated Fur Mfrs.*, 46 NY2d 1065, 1067-1068 (1979). Once this obligation is met, the burden shifts to the respondent to establish that a material issue of fact exists. *Dugan v. Sprung*, 280 AD2d 736 (3rd Dept. 2001); *Sheppard-Mobley v. King*, 10 AD3d 70, 74 (2nd Dept. 2004) *aff'd as mod.* 4 NY3d 627 (2005); *Alvarez v. Prospect Hosp.*, 68 NY2d 320, 324; *Winegrad v. N.Y. Univ. Med. Ctr.*, 64 NY2d 851, 853. "When faced with a motion for summary judgment, a court's task is issue finding rather than issue determination *(see, Sillman v. Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]) and it must view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of every reasonable inference and ascertaining whether there exists any triable issue of fact." *Boston v. Dunham,* 274 AD2d 708, 709 (3rd Dept. 2000) (citation omitted). The motion "should be denied if any significant doubt exists as to whether a material factual issue is present or even if it is arguable that such an issue exists." *Haner v. De Vito*, 152 AD2d 896, 896 (3rd Dept. 1989) (citation omitted); *Lacasse v. Sorbello*, 121 AD3d 1241; *Asabor v. Archdiocese of N.Y.*, 102 AD3d 524 (1st Dept. 2013). It "is not the function of a court deciding a summary judgment motion to make credibility determinations or findings of fact." *Vega v. Restani Constr. Corp.*, 18 NY3d 499, 505 (2012) (citation omitted).

The Court concludes that Plaintiff has made a *prima facie* case for summary judgment. Plaintiff has shown the existence of the 10 year lease for the subject premises that was in effect in June 2023 when Defendant claimed it was terminating the lease. Plaintiff has also shown that it was not provided notice of defect in the manner required by Article 27, so Defendant has no basis to terminate the lease. Next, the terms of the lease expressly state that the landlord has 30 days to cure a defect identified by the tenant. Although there had been correspondence between the parties concerning some defects before the June 23, 2023 letter, those did not specifically state what duty Plaintiff was violating. For example, in August and September of 2022, Defendant sent emails to Plaintiff regarding the structural and foundation problems with the building, but those discussions were non-committal by both sides. Defendant brought the issue to Plaintiff's attention but did not state it in terms of a notice to cure or violation of the landlord's duty; Plaintiff vowed to look into the matter. Another instance occurred in March 2023, with both sides basically doing the same thing. No notice to cure or duty was mentioned. Since

5

Defendant never invoked a notice to cure, or identified the landlord's duty, then the Defendant tenant was not allowed to claim the landlord failed to cure a default. Therefore, the lease was still valid and enforceable. Defendant could not simply disregard the requirements of Article 33 and unilaterally decide to terminate the lease and surrender the premises. Even if the June 23, 2023 letter can be viewed as a specific notice to cure, it did not provide the landlord with the required 30 day notice to correct the defect(s). Rather, Defendant indicated the lease was terminated at that point, and it would be vacating the premises the following month. Plaintiff's evidence, therefore, is adequate to make a *prima facie* showing that Defendant improperly breached the lease.

The burden is shifted to Defendant to raise a triable issue of fact. To that end, Defendant points to the affidavit of Chesna that states Defendant could not provide notice in strict compliance with the lease (either personally or by certified mail) because Defendant was never notified of the address for Colonial Realty, which bought the premises in April 2020. All communications regarding the lease were by email or orally. According to Defendant, the parties' custom was for issues to be handled by email, and that is how Defendant handled these issues.

If, in fact, the Plaintiff had impliedly agreed, by its own custom and practice to allow email correspondence to replace the personal notice or certified mail method, then the Plaintiff cannot insist on it now. *See, Matter of Lamberti v Angiolillo*, 73 AD3d 462 (1st Dept. 2010); *Ballston Ave. Dev. V. Wolf*, 45 AD3d 1032 (3rd Dept. 2007). Additionally, strict compliance is not required when Plaintiff does not claim it did not receive actual notice or was prejudiced by the purported non-compliance. *See, Goldin Real Estate, LLC v. Shukla,* 227 A.D.3d 674 (2nd Dept. 2024); *Suarez v. Ingalls*, 282 AD2d 599 (2nd Dept. 2001).

By its actions Plaintiff has acquiesced to notices being in a form other than in person or by certified mail. Chesna pointed to several examples where Defendant communicated by email to report maintenance issues and then Plaintiff responded by email as well. (Chesna affidavit at ¶¶ 13, 20, 21.) Communications regarding the second lease extension were also conducted by email. At no time did Plaintiff direct Defendant to communicate by way of certified mail. If Plaintiff waived strict compliance with the contractual notice provision, as alleged by Defendant, then Plaintiff may be estopped from insisting upon it at this point, including the use of certified

6

mail for notices. There is at least an issue of fact concerning the parties' custom and practice as it pertained to the giving and receiving of notices under the lease.

If Defendant's emails are deemed an acceptable form of communication, then the matter would focus on the content of those emails and whether they were sufficient to constitute actual notice to the landlord of the structural issues with the premises. Here again, the Court concludes that Defendant has raised triable issues. On August 24, 2022, Chesna emailed Plaintiff to notify the landlord of the poor condition of the foundation of the building and requested Plaintiff to conduct an assessment. This would be notice of the problem, and Defendant's belief that it was the landlord's duty to correct the problem. A follow up email was sent on September 16, 2022 but the landlord still took no action. The structural problems continued to worsen resulting in Defendant retaining O'Reilly to undertake his inspection. Per Chena's affidavit, O'Reilly's report was provided to Plaintiff's managing member on April 19, 2023, and there was still no action undertaken by Plaintiff. Defendant's evidence raises a question as to whether the emails it sent to Plaintiff were adequate to establish that it gave notice to the landlord of the defects and the landlord's obligation to make those structural repairs. That precludes a finding of summary judgment for the Plaintiff.

Defendant has also raised another independent basis for denial of the motion for summary judgment-constructive eviction. That issue was raised as an affirmative defense. If the premises were deemed unfit for occupancy, Defendant may have a right to terminate the lease under common law principles of constructive eviction and the statutory right under RPL § 727. "To be an eviction, constructive or actual, there must be a wrongful act by the landlord which deprives the tenant of the beneficial enjoyment or actual possession of the demised premises.... [C]onstructive eviction exists where, although there has been no physical expulsion or exclusion of the tenant, the landlord's wrongful acts substantially and materially deprive the tenant of the beneficial use and enjoyment of the premises." *Marchese v. Great Neck Terrace Assoc., L.P.*, 38 AD3d 698, 699-700 (2nd Dept. 2016) (internal quotation marks and citations omitted). The tenant must abandon the premises to the landlord to claim constructive eviction. *See New York v. Pike Realty Corp.*, 247 NY 245 (1928). Defendant had identified and informed the landlord of serious structural issues. A question of fact is presented as to whether the landlord's "'actions or inactions 'substantially and materially deprive[d] [respondent] of the beneficial use and enjoyment of the premises' so as to constitute a constructive eviction.'" *Matter of Kirkview*

7

*Assoc. LP v. Amrock*, 160 AD3d 1108, 1110 (3rd Dept 2018) *quoting Barash v. Pennsylvania Term. Real Estate Corp.*, 26 NY2d 77, 83 (1970).

For the reasons stated, the Court finds that Plaintiff's motion for summary judgment must be denied. There are questions of fact concerning whether Defendant breached the lease, or alternatively, whether Defendant has a viable claim for constructive eviction.

Next, Defendant has filed a cross-motion seeking summary judgment. In that regard, Defendant is essentially seeking a determination that a finding should be made that Defendant was constructively evicted from the premises due to the poor condition of the premises which made the premises unfit for occupancy. That conclusion finds support from O'Reilly's inspection and report. That report specifically identified structural problems and noted that ongoing settling could pose a risk to life and safety. O'Reilly's report also stated that he strongly recommended that staff be relocated out of the building and that the structural integrity of the building were compromised and presented high concerns. The record shows that Defendant informed the landlord of the condition on multiple occasions before O'Reilly conducted his inspection, and then the Defendant also provided landlord with O'Reilly's report, thereby establishing that the landlord was aware of the need for repairs. Given the severity of the issues identified by O'Reilly, it is clear that Defendant was deprived of the use of the premises. The Court finds that Defendant has made a *prima facie* case of constructive eviction.

Thus, the burden was shifted to Plaintiff landlord to raise an issue of fact. In opposition to Defendant's motion, Plaintiff submitted the affirmation of Byron Hakimi, Plaintiff's principal, who stated that he had difficulty finding an engineer to conduct a second review and provide an opinion in response to O'Reilly's report. Eventually, he was able to retain an expert and obtained a report (from Nova Group) near the end of June 2024, but by then Defendant had already announced its intention to surrender the premises. Hakimi indicated that Plaintiff was willing to perform necessary repairs but the Defendant's actions prevented it. A copy of the Plaintiff's Property Condition Assessment Report from Nova Group was attached to the attorney affirmation filed on July 3, 2024. That report confirmed that the exterior wall crack required repair which might include foundational work. Landlord takes the position that it was willing to make the necessary repairs.

The report from Nova Group is not sworn to by the author(s) of the report, and there is no affidavit from anyone with first-hand knowledge swearing to the contents of the report.

8

Therefore, it is inadmissible and cannot be considered in opposition to the motion. Moreover the affirmation of Hakimi that allegedly shows that Plaintiff was willing to make some repairs does not raise an question of fact. The structural issues were brought to the landlord's attention in August 2022 but the landlord did not take any action at that time. Despite the seriousness of the condition, and further notices from Defendant, Plaintiff waited almost a year before obtaining a structural review. Contrary to Plaintiff's argument, Defendant did not seek termination of the lease without affording the landlord time to cure the problem.

Plaintiff has failed to rebut the Defendant's showing with respect to constructive eviction. Based on that, Defendant's motion is granted.

## **CONCLUSION**

Based on all the foregoing, the Court finds that there are questions of fact precluding Plaintiff's motion for summary judgment, but that Defendant has made a *prima facie* case for summary judgment that has not been rebutted.

Accordingly, it is hereby

ORDERED, Plaintiff's motion for summary judgment is DENIED; and it is further

ORDERED, that Defendant's motion for summary judgment is GRANTED, and the Plaintiff's Complaint is dismissed.

THIS CONSTITUTES THE DECISION AND ORDER OF THIS COURT.

Dated:     September 30 , 2024
            Binghamton, New York

                                HON. EUGENE D. FAUGHNAN
                                Supreme Court Justice

9