## JTRE 23 WS (DEL) LLC v CS Wall St. LLC

2026 NY Slip Op 30871(U)

March 3, 2026

Supreme Court, New York County

Docket Number: Index No. 654992/2021

Judge: Joel M. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 03M

-----------------------------------------------------------------------------------X

JTRE 23 WS (DEL) LLC

                                Plaintiff,

                 - v -

CS WALL STREET LLC,

                          Defendant.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 654992/2021 |
| **MOTION DATE** | 02/06/2025 |
| **MOTION SEQ. NO.** | 008 |

**DECISION + ORDER ON MOTION**

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 008) 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 370, 372, 373, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 408, 409, 413, 414, 415, 416, 417, 418, 427

were read on this motion for                 SUMMARY JUDGMENT .

     This is a long-running commercial landlord-tenant dispute. Defendant and Counterclaim-Plaintiff CS Wall Street LLC ("Landlord") moves for partial summary judgment on its fifth and sixth counterclaims (relating to indemnification for mechanics liens and non-payment of Additional Rent, respectively); requests that the *Yellowstone* injunction entered at the outset of this action be vacated; and requests that the Court strike Plaintiff and Counterclaim-Defendant JTRE 23 WS (DEL) LLC's ("Tenant") pleadings and issue an order of ejectment.

     Tenant cross-moves for Summary Judgment on each of its eight causes of action and Landlord's six counterclaims.

     For the reasons set forth below, the motions are granted in part. The Court finds based on the summary judgment record that the "Down Payment Funds" were disbursed on November 10, 2020, thus making the Commencement Date of the parties' Lease December 10, 2020 and the

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No. 008

Page 1 of 37

Rent Commencement Date April 1, 2022. That finding resolves a number of the parties' claims and counterclaims, including claims for declaratory and injunctive relief. The Court also finds that Tenant has demonstrated that Landlord breached the Lease by failing to disclose Landlord's window advertising lease with a third-party (though the appropriate remedy is damages, if any, not the relief sought by Tenant), and that both parties are entitled to indemnification for certain third-party litigation in connection with the Lease.

However, there remain disputed questions of fact—including most significantly with respect to which party bears responsibility for why years have gone by without necessary construction taking place, while millions earmarked for that purpose sit idly in escrow—that preclude final judgment at this time. Finally, Landlord's request to vacate the *Yellowstone* injunction to permit declaring default under the Lease is denied without prejudice.

The Court directs the parties promptly to meet and confer (with the Court's or a mediator's assistance, if needed) to seek agreement on finalizing a proposed tax payment plan with the City for the parties' mutual benefit (discussed below) and agreement on releasing escrow funds contributed by Tenant for construction, both of which have been held up by what seem to be unnecessary and unproductive disputes throughout this litigation.

## BACKGROUND

In 2016, Landlord contracted to sell Tenant the property located at 23 Wall Street, New York, New York (the "Demised Premises"). Tenant deposited $17.050 million into an escrow account as a deposit with the intent of acquiring a fee interest in the Demised Premises (NYSCEF 403 [Defendant's Response to Plaintiff's Counterstatement of Facts ("Response to PSOF")] ¶4). The contract of sale fell through, and litigation ensued over the deposit. Ultimately, in late 2019, the parties reached a settlement agreement pursuant to which, *inter alia*,

they entered into a long-term triple net lease with respect to the subject property (Response to PSOF ¶5).

### *The Lease Agreement*

The lease, originally dated December 18, 2019, was modified by an Amended and Restated Lease, dated as of November 5, 2020 (NYSCEF 310 [the "Lease"]). The Lease provides that Tenant will perform certain "Required Alterations" to the Premises with the intent of renting out the leased space (*see* Lease, Art 6 "Use and Compliance"; Art. 10 "Alterations"). According to the Lease, the Landlord and Tenant agreed that "Tenant shall spend no less than" $9,000,000 to "complete the Required Alterations" and that certain "Down Payment Funds shall be deposited into escrow with Riverside Abstract to ensure the performance of the Required Alterations, which escrow shall be held and disbursed in accordance with a separate escrow agreement between Landlord and Tenant and Riverside Abstract as escrow agent" (Lease § 10.2[c]).

The Lease defines "Down Payment Funds" as the "Funds to be deposited with Riverside Abstract pursuant to the Closing and Escrow Instructions, representing: (i) the Required Amount to be deposited to be used to complete the Required Alterations in accordance with the provisions of this Lease and (ii) to be used by Tenant to initially provide the Security Amount to Landlord" (Lease § 1.1[u]).

The Lease further provided that

> The term of this Lease (the "**Term**") shall be the period commencing on the date (the "**Commencement Date**") which is 30 days after the later of (A) the earlier of (i) the date the Condominium executes and delivers to Tenant a recognition agreement in form reasonably acceptable to Tenant and (ii) February 1, 2020, or (B) the disbursement of the Down Payment Funds in accordance with the Closing and Escrow Instructions….

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No.  008

Page 3 of 37

(Lease § 2.2). That section goes on to provide that

> Landlord shall, in accordance with the foregoing, reasonably fix the Commencement Date and Rent Commencement Date and notify Tenant of the date so fixed. When the Commencement Date has been so determined, the parties hereto shall, at Landlord's request, execute a written agreement . . . Any failure of the parties to execute such written agreement shall not affect the validity of the Commencement Date as reasonably fixed by Landlord . . . .

(*id.*).

The Lease requires payment of annual rent ("Fixed Rent") and additional charges such as real estate taxes and condominium charges ("Additional Rent"). Section 3.5 of the Lease provides:

> Notwithstanding anything to the contrary contained herein, Tenant shall not be required to pay any portion of the Fixed Rent for the period of time (the "Fixed Rent Holiday Period") commencing on the Commencement Date and ending on the date which is the day after the last date of the 15th month following the Commencement Date (the "Rent Commencement Date"), but during such period Tenant shall otherwise be required to comply with all of the other terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, including, but not limited to, the obligation to pay all Additional Rent and all Unit Expenses.

(Lease § 3.5).

The Lease further provides that "[o]n or before the third anniversary of the Commencement Date (subject to extension due to actual delays in the Required Alterations due to Unavoidable Delays the 'Scheduled Completion Date'), Tenant shall, at Tenant's sole cost and expense, complete the Required Alterations in and to the Demised Premises" (Lease § 10.2).

On November 6, 2020, the parties entered into a "Tenant Improvement/Work Completion Escrow Agreement" (the "Construction Escrow Agreement") (NYSCEF 338) with $9 million funded into an escrow account held by Riverside Abstract.

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC          Page 4 of 37
Motion No.  008

4 of 37

[* 4]

The Closing and Escrow Instructions referenced in section 2.2 of the Lease "are to implement the closing of the Net Lease in connection with the [Demised Premises]", which is conditioned upon, *inter alia*, (1) receipt by Riverside Abstract of "sufficient funds to cover payment of all sums due under the Settlement Statement" attached to the Closing and Escrow Instructions, and (2) "written authorization [from counsel for CS Wall and JTRE] to close the transaction." (NYSCEF 385 ["Closing Instructions"]).

The Closing Instructions go on to define "Closing" as "the date on which all conditions to closing, as set forth in Section 2, are satisfied and Riverside Abstract has received written confirmation from [Landlord's counsel] that [Landlord] is prepared to close and from [Tenant's counsel] that [Tenant] is prepared to close. When all conditions to Closing have been satisfied, then, and only then, is Riverside Abstract authorized to take the following actions, **in the following order of priority**: a. Riverside Abstract shall disburse to the parties listed on the Settlement Agreement[1] the sums due to them as set forth in the Settlement Agreement, using wire instructions or other payment delivery instructions provide by each payee listed on the Settlement Statement . . . ." (*id.* [emphasis in original]).

---

[1] It appears that the parties have not placed the "Settlement Agreement" in the summary judgment record. However, according to the "Notice of Default of Settlement Agreement dated July 20, 2020" (NYSCEF 29), which is in the record, the Settlement Agreement states that: "JTRE and CS WALL hereby agree to simultaneously with the execution of this Agreement, execute a net lease (the 'Net Lease') for the Units. On or before the Closing Date, JTRE and CS WALL agree to execute the Escrow Documents. On the Closing Date, Riverside shall disburse the Contract Down Payment and the Escrow Documents in accordance with the Escrow Agreement. The Net Lease shall be released immediately to the Parties. The Escrow Documents shall be released by Riverside in accordance with the Escrow Agreement on the Closing Date, and the Parties hereby authorize Riverside to file the Escrow Documents in accordance with the Escrow Agreement and provide all parties with a copy marked filed, where applicable" (NYSCEF 29). The Settlement Statement executed by the parties (NYSCEF 386) is in the record, as discussed *infra*.

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No.  008

Page 5 of 37

Under the heading "Disbursement of Riverside Escrow Total of: $17,075,308.85," the Settlement Statement executed by the parties includes amounts paid to JTRE, amounts paid to CS Wall, *and* amounts to be "held by Riverside" (NYSCEF 386 ["Settlement Statement"]). Thus, the agreed-upon definition of "Disbursement of Riverside Escrow" includes the amounts "held by Riverside." This section lists $4,456,860.04 paid to JTRE, $2,000,000.00 paid to CS Wall as security deposit, $1,618,448.81 held by Riverside Abstract for payment of JTRE's title charges, as well as the $9,000,000.00 held by Riverside for "Construction Escrow" (*id.*). It also lists $1,750.00 for Landlord's Legal Fees relating to "Common Charges Liens and Likler Litigation." (*id.*).

On November 9, 2020, Landlord's counsel, Tenant's counsel, Tenant, and Riverside Abstract signed the Written Authorization to Close letter providing:

> We are writing to you regarding the Closing and Escrow Instructions Agreement (the "Closing and Escrow instructions Agreement") …In order to consummate the closing of the transactions related to the Lease, Herrick Feinstein LLP, as the authorized representative of Tenant as per Paragraph 2(c) of the Closing and Escrow Instructions Agreement as well as Tenant and Riverside Abstract LLC ("Riverside") hereby authorize and consent to the following . . . Retaining by Riverside Abstract LLC in escrow of $8,870,000.00, such amount representing the remainder initial deposit pursuant to that certain Tenant Improvement/Work Completion Escrow Agreement, dated as of November 6, 2020 after disbursement of $130,000 for payment to Lilker Engineering for satisfaction of the mechanics lien recorded by Lilker Engineering . . . Release of S4,456,860.04 to Tenant as per the Closing Statement (the "Closing Statement") dated as of November 6, 2020.

(NYSCEF 387 ["Written Authorization to Close"]).

On the day of the Closing, November 10, 2020, Landlord's counsel emailed Riverside Abstract and the relevant parties, stating "Please fund in accordance with the fully executed disbursement letter attached," attaching the Written Authorization to Close and the Closing

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Page 6 of 37
Motion No.  008

6 of 37

Instructions (NYSCEF 70 ["11.10.20 Transmittal email"]). The Settlement Statement also includes Additional Rent (condominium charge and real estate taxes) for the period of March 2020 through December 2020 to be paid to Tenant, and payment by Landlord to Tenant of $933,333.36, representing rent paid by subtenant Hermès accruing from March 1, 2020, as well as $ 112,791.66 for the Hermès Lease Security Deposit (NYSCEF 386). Tenant has been in possession of the property since March 1, 2020. After the Settlement Statement was signed, Tenant has been collecting rent directly from its tenant Hermès. As discussed below, however, the funds earmarked for construction have not been released under the Construction Escrow Agreement and the planned build-out of the remaining space has not taken place.

### *Notice of Default*

On May 19, 2020, Landlord notified Tenant in a Commencement Date Notice that the Commencement Date occurred on March 1, 2020, and that the Rent Commencement Date shall commence on June 1, 2021 (NYSCEF 382). The Commencement Date Notice attached an unsigned Commencement Date Agreement ("CDA") that states "the Down Payment Funds were disbursed in accordance with the Closing and Escrow Instructions prior to February 1, 2020" (*id.*).

On December 24, 2020, Jack Terzi, principal of Tenant, wrote to Landlord to provide "an update on our construction & architecture plans" and other items, and stated that "[w]e are humbly requesting relief in the Rent Commencement Date, to allow us to properly succeed. We believe we will be in position to make payments September 2022 (15 additional months free)," citing COVID-related economic conditions (NYSCEF 384).

On July 21, 2021, Landlord delivered a Notice of Default and Twenty (20) Days to Cure, to Tenant) for failure to pay rent due on June 1, 2021 (the "Notice of Default") (NYSCEF 331).

**654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC**                Page 7 of 37
   **Motion No.  008**

7 of 37

[* 7]

*Yellowstone Injunction & Litigation*

In August 2021, Tenant commenced this action seeking declaratory judgment and a permanent injunction (NYSCEF 1 ["Compl."]).  Tenant sought a declaratory judgment as to when its obligation to pay rent began. According to the Complaint, the Landlord contended that Tenant's rental obligations began on June 1, 2021.  Tenant, however, contended that the "Rent Commencement Date" was not scheduled to occur "until April 1, 2022 at the earliest" (Compl. ¶2).

In seeking its *Yellowstone* injunction, Tenant represented to the Court that "Section 2.2 of the Lease provides that the Commencement Date occurs thirty days after 'the disbursement of the Down Payment Funds in accordance with the Closing and Escrow Instructions.' Thus, Tenant's obligation to pay rent is calculated from the date that the Down Payment Funds were disbursed. There is little question that this disbursement occurred on November 10, 2020." (NYSCEF 12 ¶7 [internal citations omitted], citing the Written Authorization to Close letter [NYSCEF 9]).

A *Yellowstone* Injunction was granted on August 19, 2021, preliminarily enjoining Landlord from terminating the Lease, enforcing the Notice of Default, or commencing any action or proceeding seeking to dispossess Tenant from the Premises (NYSCEF 19).  In October 2021, Tenant filed an Amended Complaint, adding claims for breach of contract and breach of the implied covenant of good faith and fair dealing (NYSCEF 62 ["FAC"]).

On November 7, 2021, Landlord's motion seeking an order for Tenant to pay monthly fixed rent *pendente lite* and post an undertaking was denied without prejudice to reapplying in or

**654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC**                    **Page 8 of 37**
**Motion No.  008**

8 of 37

after February 2022 (NYSCEF 99).[2]  Landlord thereafter filed its Answer to the Amended

Complaint and asserted Counterclaims for declaratory judgment, breach of contract,

indemnification, and breach of implied covenant (NYSCEF 89).

On July 8, 2024, the Court granted Tenant's motion for leave to file a further amended

complaint (NYSCEF 244), and Tenant thereafter filed its Second Amended Complaint

(NYSCEF 248).  On August 7, 2024, Landlord filed its Verified Answer to Second Amended

Complaint with Counterclaims (NYSCEF 259).  Tenant filed its response on August 27, 2024

(NYSCEF 261).

In the Second Amended Complaint, Tenant brings claims for (1) Breach of Contract for

Leasing to Third-Party; (2) Breach of Contract for Indemnification relating to a King's County

Action; (3) Declaratory Judgment that (i) the Commencement Date has not yet been triggered as

a result of the failure to disburse Down Payment Funds to Tenant, or in the alternative, that it is

January 1, 2024 at the earliest, (ii) the Commencement Date and Rent Commencement Date

proposed by Landlord in the CDA was not reasonably fixed, (iii) the Notice of Default is invalid

because it is based on an erroneous calculation of the Commencement Date and Rent

Commencement Date, and (iv) at all relevant times no default existed under the Lease as alleged

in the Notice of Default; (4) Injunction enjoining Landlord from taking any steps to terminate the

lease based on the Notice of Default; (5) Breach of Contract relating to Landlord's failure to

cooperate with Tenant; (6) Breach of Contract relating to Tenant paying Additional Rent prior to

the Commencement Date; (7) Breach of the Covenant of Good Faith and Fair Dealing seeking

declaratory relief; and (8) Breach of the Covenant of Good Faith and Fair Dealing relating to

---

[2] As discussed below, Landlord in December 2023 filed a motion to require Tenant to pay past-due Fixed Rent and Additional Rent and going forward *pendente lite* (Mot. Seq. 003).

Landlord forcing Tenant to pay Additional Rent prior to the Commencement Date, failing to disburse the construction funds, and impeding Tenant's construction (*see* NYSCEF 248).

Landlord brings counterclaims for (1) Declaratory Judgment that (i) the Commencement Date Agreement is valid, enforceable, and binding on the Landlord and Tenant, and (ii) "the proper Commencement Date under the Lease is March 1, 2020 and that the proper Rent Commencement Date under the Lease is June 1, 2021 or, at the latest, pursuant to Section 2.2(B) of the Lease, December 10, 2020, with the Rent Commencement Date occurring on March 10, 2022"; (2) a Money Judgment; (3) Damages and Expenses; (4) Breach of the Covenant of Good Faith and Fair Dealing; (5) Indemnification relating to Mechanics' Liens; (6) Breach of Contract relating to Tenant's failure to pay Additional Rent (*see* NYSCEF 259).

### *Additional Rent*

Tenant commenced paying Additional Rent (real estate taxes and condominium charges as they become due under the Lease) as of March 1, 2020 (*see* NYSCEF 165 ["Ariganello Aff"] at 5 n6). As noted, at the closing, the parties signed the Settlement Statement, which released to Landlord Additional Rent for March 2020 through December 2020 (NYSCEF 386). While Tenant continued paying Additional Rent for a time, Tenant ceased paying Additional Rent as of July 1, 2022 (Ariganello Aff at 5 n6).[3]

In December 2023, Landlord filed a motion by Order to Show Cause to require Tenant to pay past-due Fixed Rent and Additional Rent and going forward *pendente lite*, including real estate taxes and condominium charges as they become due under the Lease, post a bond in amount of rent arrears, and bond certain mechanics liens (Mot. Seq. 003). After supplemental

---

[3] However, Tenant submits that it continued to pay all condominium maintenance charges through March 2024 (NYSCEF 326 ["Terzi Aff"] ¶88).

**654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC**
**Motion No.  008**

Page 10 of 37

[* 10]

briefing, the Court granted Landlord's motion in part, ordering that Tenant pay past-due Additional Rent and Additional Rent going forward *pendente lite*, but denying Landlord's interim request for payment of past-due Fixed Rent and Fixed Rent going forward (NYSCEF 245 ["Pendente Lite Order"]).

At a conference with the Court on October 21, 2024, Morrison Cohen, LLP, then counsel for Tenant, represented that Tenant had "reached an agreement, a payment plan with the city" with regard to "[t]he additional rent component of property taxes" and "was no longer in default" (NYSCEF 293 [October 2, 2024 Tr. 4:16-22]). In November 2024, the Court granted Morrison Cohen, LLP's motion to withdraw as counsel, but directed that Morrison Cohen either provide Landlord with a copy of Tenant's purported agreement with the City (if it was in counsel's possession) or "advise [Tenant] that [Tenant] must promptly provide the agreement to Defendant OR provide written verification from the City of New York that there is no longer a default in the payment of the past due real estate taxes for the subject condominium units" (NYSCEF 294 at 3). Landlord asserts that Tenant and Morrison Cohen did not comply with that Order, which Tenant denies, stating that "[t]he installment agreements were provided to [Landlord] who has refused to authorize them out of spite and animus" (NYSCEF 328 [Plaintiff's Response to Defendant's Statement of Facts ("Response to DSOF")] ¶28).

Tenant contends that it has negotiated a tax installment payment plan with the NYC Department of Finance, but that Landlord (as owner of the property) has refused to authorize it (Response to DSOF ¶27; NYSCEF 359; 360). In March 2025, Tenant's counsel emailed Landlord's counsel stating, "We can't get the installment plan without ownerships [sic] approval." Landlord's counsel responded, "Help me explain to my clients why they should agree to this. [Tenant] already owes this additional rent under the lease and pursuant to the Court's

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No. 008

Page 11 of 37

order of 7/8/2024. If we agree to this installment plan, what happens if your client can't pay after a few months? Or can't pay when the next bill comes due in July? It is apparent he does not have the money, and interest is compounding daily at 16%. What assurances do we have that this time he will finally pay?" (NYSCEF 360). The proposed Property Collection Installment Agreement submitted provide that the "Agreeor" was to be "CS WALL STREET, LLC" (NYSCEF 359).

As of February 2025, Landlord submits that Tenant owes $7,299,123.73 in unpaid real property taxes. Tenant does not deny that money is owed, but does dispute its obligation to make payment and the amount suggested by Landlord (Response to DSOF ¶¶18, 22, 29; *see* NYSCEF 307; NYSCEF 366 at 5).

### *The Parties' Obligations under the Lease*

The Lease additionally sets forth the parties' obligations with respect to the Property's Condominium Board (which is not a party to the Lease) (*see* Lease § 35). Section 35.1 of the Lease states:

> To the extent any consent or approval of the Condominium Board is required under the Condominium Documents in order for Tenant to take any action or exercise any right or option under or pursuant to this Lease, Tenant shall be required to obtain such consent or approval prior to taking such action or exercising such right or option, and Landlord shall reasonably cooperate with Tenant in attempting to obtain any such consent and/or approval (except if and to the extent that the approval of Landlord is required under this Lease, in which event the provisions of this Lease shall govern Landlord's actions with respect thereo) . . . .

(Lease § 35.1).

The Lease further provides that "Landlord, at Tenant's request, shall use its commercially reasonable efforts to cause the Condominium Board having responsibility under the Condominium Documents to provide the foregoing utilities, perform the foregoing repairs, respond to requests for consent or approval, or take such other action as the Condominium Board

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC                Page 12 of 37
Motion No.  008

12 of 37

is required to take" and the Tenant shall assist with these efforts, but that the Landlord shall have "no obligation to perform the obligations of the Condominium Board or liability for the failure of the Condominium Board to perform the same" (Lease § 35.2). This section goes to provide that "[i]n the event that Landlord fails to cause the Condominium Board to perform any obligations described in this Section, Tenant may, at Tenant's sole cost and expense, and in Landlord's name if required, attempt to cause the Condominium Board to perform the same" subject to certain notice requirements (Lease § 35.2).

The Lease also provides that "if and so long as no Event of Default is continuing under this Lease" Landlord "shall permit Tenant to nominate" two members of the "Condominium Board (provided that such members nominated by Tenant are reasonably acceptable to Landlord)" (Lease § 35.4[B]). The record reflects that Bethany Foxworth, as managing agent for the Condominium Board, emailed Landlord's counsel, Martin Shaw, and Landlord's managing agent, Sal Ariganello of Cushman & Wakefield, on numerous occasions at least as early as January 2021 asking for necessary paperwork to have Jack and Morris Terzi appointed to the Board, including a Power of Attorney from the Commercial Unit Owner that covers the right to make these appointments, or a letter from the owners themselves (*see* NYSCEF 73, 75, 347). In January 2023, Ariganello secured a power of attorney and provided the necessary paperwork to the Condominium Board's new managing agent-Jillian Berman of AKAM (*see* NYSCEF 348).

The record also reflects that there was confusion or delay relating to certain documentation requested by the Board, including the Lease between the parties (*see* NYSCEF 72, 74, 337). By email dated February 24, 2021, Foxworth on behalf of the Condominium Board emailed Morris and Ariganello stating: "Good afternoon Morris, I have received the necessary confirmations from the Board attorneys and FSI, the reviewing engineering firm. Please see the

requested items below in order for the Board to move forward on reviews and enter into contract with FSI. 1) A $5,000 deposit made payable to FSI Architecture (this amount will be applied to the final statement) 2) Written confirmation that JTRE will reimburse the Condominium for any professional fees (including legal, architectural or engineering) incurred in connection with the alteration, 3) A copy of your lease with 23 wall." (NYSCEF 349).

By email dated March 10, 2021, Ariganello responded as follows: "Martin, If I may chime in. Morris has been running the plans through me for the MEP which I in turn have sent to Bethany. See emailed attached with link to plans. The issue regarding the plans is that the board will not hire FSI to review plans until they have the information requested in Bethany's email. This request includes sending a copy of the lease with [Tenant]. Right now that is this is keeping [Tenant] from moving forward with design. Once the 3 items are given to the board this can move forward." (NYSCEF 337).  Ariganello also testified that "Martin needed approval to share the lease with the board" (NYSCEF 330 at 92:6-13).

Next, the record reflects that on November 12, 2020, December 24, 2020, January 15, 2021, March 4, 2021, May 27, 2022 and April 4, 2023, Tenant submitted requests for disbursement under the Construction Escrow Agreement (NYSCEF 339-344).

Section 3.4 of the Construction Escrow Agreement states:

> **Special Condition Precedent to Escrow Trustee's Obligation to Make the First Escrow Disbursement:** In addition to the terms and conditions set forth in Section 3.2 and this Section 3.3 hereof and elsewhere in this Agreement, prior to the First Escrow Disbursement hereunder, Tenant shall provide evidence to Landlord that Tenant has obtained all permits and approvals in accordance with applicable Legal Requirements from the applicable municipal authorities as are necessary to commence and complete the Construction Work, as confirmed by Landlord in its sole discretion

(NYSCEF 338).

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No.  008

Page 14 of 37

14 of 37

Landlord disputes whether Tenant has met the contractual conditions to construction funds being disbursed. In particular, Landlord asserts that Tenant has not complied with the conditions as required by the Construction Escrow Agreement, including, but not limited to, (i) the submission of a budget and draw schedule for the Project and Improvements (*id.* at Sec 3.4), (ii) Landlord's receipt of "a sworn statement from tenant disclosing the various contracts entered into by the Tenant" (*id.* at Sec. 3.3[c]), (iii) a sworn statement from the architect that the work has been completed (*id.* at Sec. 3.3[e]), (iv) "paid receipts (including invoices, bills and copies of payments made in connections therewith)" (*id.* at Sec. 3.3[a]), and "estoppel certificates, lien waivers or other similar certifications in form satisfactory to Landlord, in its discretion, showing amounts paid and amounts due to all persons or organizations furnishing labor or materials in connection with the completion of the Improvements" (*id.* at Sec. 3.2[d]; Response to PSOF ¶27). To date, none of the remaining $8,870,000.00 Downpayment Funds has been disbursed to Tenant.

### *Mechanics Liens*

The Lease provides in Section 9.1 that:

> Tenant shall not suffer or permit any mechanics' or other liens (except such as are caused by any acts or omissions of Landlord) to be recorded or filed against the Units and/or the Demised Premises . . . If any such lien . . . . shall at any time be recorded or filed, Tenant shall cause the same to be discharged of record within ninety (90) days . . . . If Tenant shall fail to cause any such lien to be discharged of record within such period, Landlord shall have the right (in addition to all other remedies), but not the obligation, to cause the discharge of such lien of record either by paying the amount claimed to be due, by deposit in court or by bond. Tenant shall reimburse Landlord upon demand as Additional Rent for any amount paid or deposited by Landlord therefor, including, without limitation, all reasonable incidental costs and expenses (including attorneys' fees) in connection therewith, together with interest on all such amounts at the Lease Interest Rate, from the date of payment or deposit by Landlord

654992/2021  JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Page 15 of 37
Motion No. 008

15 of 37

[* 15]

(Lease § 9.1). On or about June 5, 2023, Socotec, Inc.("Socotec"), filed a mechanic's lien on the Demised Premises as a result of the Tenant's failure to make payment to Socotec (Response to DSOF ¶31; NYSCEF 160). On July 31, 2023, Socotec commenced an action to foreclose on its mechanics lien against the Demised Premises; Landlord was named as a defendant in the action (Response to DSOF ¶32; NYSCEF 161).

On or about January 30, 2023, Nouveau Elevator Industries, LLC ("Nouveau"), filed a mechanics lien notice on the Demised Premises citing Tenant's failure to make payment to Nouveau (Response to DSOF ¶33; NYSCEF 162). In September 2023, Nouveau commenced an action to foreclose its mechanics lien against the Demised Premises; Landlord was again named as a defendant in the action (Response to DSOF ¶34; NYSCEF 163).

Landlord filed its answers to each of the complaints and cross-claimed against Tenant in each action (Response to DSOF ¶35). Both actions were eventually discontinued against Landlord (Response to DSOF ¶37).

***Big City Outdoor Lease***

The Lease at issue in this case provides that "Landlord represents and warrants that, as of the date hereof, the Demised Premises are vacant, and are not subject to any other lease or other occupancy agreement, other than the Hermes Lease" (Lease § 2.4).  It goes on to provide that

> Tenant acknowledges that Landlord has made no representations to Tenant with respect to the condition of the Demised Premises and Tenant agrees to accept possession of the Demised Premises in the condition which shall exist on the Commencement Date "as is" and Tenant further agrees that Landlord shall have no obligation to perform any work or make any installations in order to prepare the Demised Premises for Tenant's occupancy. Supplementing (without limiting) the foregoing, Tenant agrees to accept possession of the Demised Premises subject to any and all of the following which affect the Condominium, the common elements of the Condominium, and/or the Demised Premises: (a) liens, encumbrances, covenants, easements and title conditions; (b) consents, restrictions,

> regulations, requirements, laws, agreements, reservations of record
> ordinances, resolutions, orders, rights of utility companies, encroachments,
> variations between record lot lines and those shown on tax maps, rights of
> tenants or persons in possession, violations and notes or notices of
> violations of law or governmental orders, ordinances or requirements; . . .
> (d) any state of facts that an accurate survey or personal inspection of the
> Building, Condominium, common elements of the Condominium, or
> Demised Premises would disclose . . . .

(Lease § 2.5).

In 2023, Tenant was notified that, notwithstanding the above provision, Landlord had in fact previously leased window space to a third-party, Big City Outdoors LLC ("Big City"). The Big City Lease, dated November 9, 2017, provides that it is "a business arrangement between Big City Outdoor LLC, and CS Wall Street, LLC with respect to the placement of advertising on the interior window façade" at 35 Wall Street (NYSCEF 333). The Lease further provides it is a "6 year term with an option to renew for additional terms. The term shall commence on January 1st, 2018 or upon posting the first advertising, whichever occurs first" (*id.*). The "Additional Terms" provide that "in the event the commercial space in the property is rented or sold with the condition of the termination of this lease, [Big City] shall have the right to terminate this lease, with 60 days advance notice. [Big City] shall have the exclusive right to market [Landlord's] adjacent property, *23 Wall Street*, for window advertising. [Big City] shall give 30 days' advance notice when it has an advertising contract. [Big City] shall pay [redacted] per month in use for 23 Wall (*id.* [emphasis added]).

In January 2023, Big City began serving cease and desist letters on subtenants of Tenant, which themselves had leased the window space at the Demised Premises to erect advertising. The subtenants emailed Tenant complaining of the cease and desist letters and explaining how it was harming their ability to sub-lease the window space (Response to PSOF ¶42; NYSCEF 351).

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No.  008

Page 17 of 37

17 of 37

Big City Outdoor also contacted Tenant by text asking for its 2017 Lease to be acknowledged by Tenant (NYSCEF 350). Tenant rejected the idea of Big City having a lease but expressed willingness to negotiate (*id.*).

In October 2023, Tenant was named as a party defendant in a Supreme Court, Kings County action entitled *Big City Outdoors LLC v CS Wall Street LLC, JTRE 23 WS (DEL) LLC, et. al.* Index No 530713/2023 (the "Big City Litigation") (NYSCEF 353, 354). Big City alleged it had a contract to exclusively lease all of the windows in the Demised Premises through December 31, 2023. Moreover, Big City alleged that the term of the contract had been tolled between itself and Landlord Street LLC due to unforeseen scaffolding erected on a neighboring property. Big City alleged it renewed its option to extend the term of its lease for an additional six (6) year term (NYSCEF 353; *see also* NYSCEF 333 ["Big City Lease"]).

In November 2023, Ariganello filed a sworn affirmation in the Big City Litigation asserting that in November 2020 he "informed" Big City that "[Landlord] had leased the Premises to one of the [Tenant] Defendants and, as a result, the Signage Agreement was terminated unless [Big City] could reach a separate, distinct and new agreement with [Tenant] as the tenant of the Premises" (NYSCEF 356 ¶8).

Nevertheless, on December 28, 2023, Landlord served Big City with a notice of termination informing it that its leasehold interest in the Demised Premises would be expiring on December 31, 2023 and would not be renewed. The December 28, 2023 notice alleged that Big City Outdoor LLC remained indebted to Landlord for base rent due under the 2017 Big City Lease in the sum of $472,000.00 through December 31, 2023 (NYSCEF 329). The Big City Litigation remains ongoing.

**654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC**                                    **Page 18 of 37**
**Motion No.  008**

18 of 37

## DISCUSSION

Under CPLR 3212, summary judgment is appropriate when a party establishes with evidence "that there is no material issue of fact to be tried, and that judgment may be directed as a matter of law" matter of law." (*Brill v City of New York*, 2 NY3d 648, 651 [2004]). "Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

### I.    Rent-Related Claims

#### A.    *Commencement Date*

Tenant's Third Claim for Declaratory Relief seeks a declaration that (i) the Commencement Date has not yet been triggered as a result of the failure to disburse Down Payment Funds to Tenant, or in the alternative, that it is January 1, 2024 at the earliest, (ii) the Commencement Date and Rent Commencement Date proposed by Landlord in the CDA was not reasonably fixed, (iii) the Notice of Default is invalid because it is based on an erroneous calculation of the Commencement Date and Rent Commencement Date, and (iv) at all relevant times no default existed under the Lease as alleged in the Notice of Default.

Tenant also moves for summary judgment in its favor on Landlord's First Counterclaim, which seeks a declaration that (i) the Commencement Date Agreement is valid, enforceable, and binding on the Landlord and Tenant, and (ii) the proper Commencement Date under the Lease is March 1, 2020, or at the latest, December 10, 2020. While Landlord does not move for affirmative relief on either claim, the record is sufficiently well developed to permit the Court to resolve their respective requests and to issue a declaration.

Based on the summary judgment record, the Court finds the following: (1) the Lease Commencement Date is December 10, 2020 (thirty days after the Down Payment Funds were

**654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC**
**Motion No.  008**

Page 19 of 37

19 of 37

disbursed on November 10, 2020); and therefore, (2) the Rent Commencement Date is April 1, 2022 (fifteen months after the Commencement Date to account for Rent Holiday Period).

Under the Lease, the Commencement Date is no later than thirty days after the Down Payment Funds are disbursed (Lease § 2.2). The record reflects that the Down Payment Funds were, in fact, disbursed on November 10, 2020, the closing date, as Tenant conceded in its initial papers seeking the Yellowstone injunction.[4]

As noted above, on the day of the Closing, Riverside Abstract disbursed the Down Payment Funds as directed in the Closing Instructions, Settlement Statement, and Written Authorization to Close, including to Tenant's counsel, to Tenant, and to Riverside Abstract for title charges. Pursuant to the closing instructions, Riverside Abstract disbursed the "Riverside Escrow total of: $17,075,308.85," which included sending money to Tenant and Landlord, as well as Riverside Abstract retaining $8.87 million and placing it under the Construction Escrow Agreement dated November 6, 2020. Riverside Abstract also disbursed the sum of $2 million to Landlord as the security deposit under the Lease. These disbursements tracked the definition of Down Payment Funds in 1.1(u) of the Lease: "(i) the Required Amount to be deposited to be used to complete the Required Alterations in accordance with the provisions of this Lease and (ii) to be used by Tenant to initially provide the Security Amount to Landlord" (*see* Lease § 1.1[u]).

---

[4] In seeking its Yellowstone injunction, Tenant previously represented to the Court that "Section 2.2 of the Lease provides that the Commencement Date occurs thirty days after 'the disbursement of the Down Payment Funds in accordance with the Closing and Escrow Instructions.' Thus, Tenant's obligation to pay rent is calculated from the date that the Down Payment Funds were disbursed. ***There is little question that this disbursement occurred on November 10, 2020.***" (NYSCEF 12 ¶7 [emphasis added] [internal citations omitted], citing Mr. Shaw's November 10, 2020 transmittal email [NYSCEF 9]).

[* 20]

While Tenant argues that the Commencement Date is defined as when closing funds are disbursed *to Tenant* from escrow for construction, that is not what the Lease and closing documents provide. The Closing Instructions, which are referenced in section 2.2 of the Lease, defines "Closing" as the date at "all conditions to closing" have occurred, including that Riverside Abstract has received written confirmation from Landlord's law firm that they are prepared to close (NYSCEF 385). When all conditions have been satisfied, the escrow agent is "authorized to take the following actions, in the following order" including that it "... shall disburse to the parties listed on the Settlement Agreement the sums due to them as set forth in the Settlement Agreement, using wire instructions or other payment delivery instructions provide by each payee listed on the Settlement Statement" (NYSCEF 385; NYSCEF 387 ["Written Authorization to Close"]). There is no reference to the separate and subsequent disbursement of construction funds *to Tenant* as a condition to Closing or the Commencement Date. Instead, as described above, the Settlement Statement's definition of "Disbursement of Riverside Escrow" includes amounts "held by Riverside" within that definition, which in turn includes the construction funds (NYSCEF 386). The Construction Escrow Agreement, which governs the disbursement of the downpayment funds to reimburse construction costs, is separate from the Closing documents and has its own procedure and provides that funds are to be "disbursed in several installments" as and when costs are "incurred or paid for by the General Contractor" (NYSCEF 388).

Tenant's argument that the Rent Holiday Period was fifteen months because it was anticipated that the construction would be completed in 15 months is unpersuasive, since the Lease clearly contemplates that the construction could take up to three years (*see* Lease § 10.2 ["On or before the third anniversary of the Commencement Date (subject to extension due to

**654992/2021  JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC**  Page 21 of 37
**Motion No. 008**

21 of 37

actual delays in the Required Alterations due to Unavoidable Delays the 'Scheduled Completion Date'), Tenant shall, at Tenant's sole cost and expense, complete the Required Alterations in and to the Demised Premises"]).[5]

On the other hand, Landlord's contention that its unilateral determination that the Commencement Date is March 1, 2020 should be deemed conclusive is unavailing. The triggering events for the Commencement Date are set out specifically in Section 2.2 of the Lease. The record does not support Landlord's implicit contention that March 1, 2020 is the "later of" the two triggering events set forth in Section 2.2 (A) and (B). Moreover, while the unsigned Commencement Date Agreement states that "the Down Payment Funds were disbursed in accordance with the Closing and Escrow Instructions prior to February 1, 2020" (*id.*), it does not reference when that occurred.

Landlord's contention that it was permitted to "reasonably fix" the Commencement Date in March 2020 notwithstanding the specific conditions set forth in Section 2.2 is similarly unavailing. Section 2.2, which requires the disbursement of the Down Payment Funds as a predicate for the Commencement Date, provides that "Landlord shall, ***in accordance with the foregoing***, reasonably fix the Commencement Date and Rent Commencement Date…" (Lease

---

[5] On this summary judgment motion, JTRE argues for the first time that the Commencement Date under the Lease has yet to occur based on the Big City Lease or the March 11 2025 deposition of Sal Ariganello, the managing agent of the Premises. This new theory is unavailing. As to the latter, Mr. Ariganello testified that he was not involved with drafting the Lease and had no responsibility for determining the Commencement Date thereunder, nor was he ever shown the Closing and Escrow Instructions prior to the drafting of the Lease and is not responsible for determining disbursements thereunder (*see* NYSCEF 330 at 160:14-25–161:1-12). The alternative declaration, that the Commencement Date is January 1, 2024 because of the existence of the Big City Lease through December 31, 2023, fails. Even if true, this would be a breach of lease—not a reason that the Commencement Date (which is contractually defined) has not occurred.

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No. 008

Page 22 of 37

22 of 37

§2.2 [emphasis added]).  Therefore, Landlord can only reasonably fix the commencement date based on the conditions set forth elsewhere in Section 2.2, including disbursement of the Down Payment Funds. While it is true, as Landlord argues, that at times Tenant appeared to accept an earlier Commencement Date by accepting rent from Hermès starting in March 2020, and paying Additional Rent (as set forth in the Settlement Statement) starting in March 2020, that does not change the unambiguous requirements of the Lease as to setting the Commencement Date.

Accordingly, the Court finds that the Commencement Date under the Lease is December 10, 2020, and therefore the Rent Commencement Date is April 1, 2022.  Given this ruling, Tenant was obligated to pay Fixed Rent beginning on April 1, 2022.

Therefore, Tenant's request for a declaration that the Commencement Date has not yet been triggered as a result of the failure to disburse Down Payment Funds to Tenant, or in the alternative, that it is January 1, 2024 at the earliest, is denied.  Upon denial of this declaration request, the Court declares that the Commencement Date under the Lease is December 10, 2020. This has the effect of granting in part the branch of Landlord's First Counterclaim seeking a declaration that the Commencement Date under the Lease is March 1, 2020, or at the latest, December 10, 2020.

Tenant's request for a declaration that the Commencement Date and Rent Commencement Date proposed by Landlord in the CDA was not reasonably fixed, that the Notice of Default is invalid because it is based on an erroneous calculation of the Commencement Date and Rent Commencement Date, and that at all relevant times no default existed under the Lease as alleged in the Notice of Default is granted.  The granting of this declaration has the effect of dismissing the branch of Landlord's First Counterclaim seeking a

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No.  008
Page 23 of 37

23 of 37

[* 23]

contrary declaration that the unsigned Commencement Date Agreement is valid, enforceable, and binding on the Landlord and Tenant.

### B. *Additional Rent*

Landlord is entitled to partial summary judgment on *liability only* on its Sixth Cause of Action for Breach of the Lease against Tenant for unpaid Additional Rent (real estate taxes and condominium charges as they become due under the Lease).

As noted, the Court already granted Landlord's motion requiring that Tenant pay past-due Additional Rent and Additional Rent going forward *pendente lite* (NYSCEF 245 [the "Pendente Lite Order"]). The Lease explicitly states that during the Fixed Rent Holiday Period, "Tenant shall otherwise be required to comply with all of the other terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, including, but not limited to, the obligation to pay all Additional Rent and all Unit Expenses" (Lease § 3.5).

In light of the above ruling which determines the Commencement Date, Tenant is liable for Additional Rent (which is triggered by the Commencement Date, not the Rent Commencement Date) from *December 2020 forward*. Thus, Tenant must pay the past-due Additional Rent due and owing and Additional Rent going forward.

Moreover, Tenant is not entitled to summary judgment on its Sixth Cause of Action for Breach of Contract against Landlord for the Additional Rent Tenant paid prior to the Commencement Date. In Tenant's Sixth Cause of Action, Tenant alleges that "Landlord breached this obligation by requiring the payment of Additional Rent based on an unreasonably and incorrectly calculated Commencement Date of March 1, 2020. The Commencement Date has not been triggered as the Down Payment Funds have yet to be released. In the alternative, the Commencement Date at the earliest could be January 1, 2024 because of the existence of the

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC      Page 24 of 37
Motion No.  008

24 of 37

BCO Lease through December 31, 2023" (SAC ¶162). However, as discussed above, the Court rejects Tenant's proposed Commencement Date.[6]

However, Landlord's request for a money judgment on this issue is denied since Tenant has raised fact issues as to Landlord's calculations, which appear to include Additional Rent starting from March 1, 2020. Moreover, it is unclear from the parties' submissions whether Tenant has paid any Additional Rent since July 2022 (*compare* NYSCEF 366 at 39 [Tenant submits that it paid "all common charges alleged to be owed by the Plaintiff through March 2024" but could not satisfy "the $7,299,123.73 in outstanding real estate taxes owed to New York City *having accrued since March 1, 2020*"] *with* NYSCEF 404 ["Defendant is seeking Additional Rent in the form of real estate taxes from 2023 forward"]). Finally, Landlord has failed to address whether the Lease requires Tenant to pay such Additional Rent (in particular, real estate taxes) to Landlord or directly to the relevant authorities (*see* Lease § 5.3, 5.5).

Additionally, while the Court declines to grant Tenant's request to renew the Pendente Lite Order or to vacate it,[7] the Court does recognize that Tenant has made efforts to comply with

---

[6] To the extent Tenant seeks a credit for Additional Rent paid before the Commencement Date, that request is denied on this summary judgment record. The Court's ruling determining the Commencement Date *under the Lease* does not override the parties' separate and specific agreement (the Settlement Statement) that Tenant would pay Additional Rent between March 2020 and December 2020. Unless and until the Court finds that the Settlement Statement is invalid (as Tenant appears to seek in its eighth cause of action), there is no basis on the instant motion to invalidate the parties' express agreement with respect to payment of Additional Rent during that period.

[7] Tenant's request to renew the Pendente Lite Order and vacate that portion directing Plaintiff to pay "past due" Additional Rent as the Pendente Lite Order was entirely reliant upon an assumption the "Commencement Date" had already occurred is denied for reasons already discussed. Likewise, Tenant's argument that the Pendente Lite Order must be revisited and vacated due to the Big City Lease is denied (as discussed further below). Moreover, Tenant's contention that the Court was not aware of the Big City Lease at the time it issues the Pendente Lite Order is inaccurate. Tenant raised the Big City Lease (referred to as the "signage lease")

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No.  008

Page 25 of 37

25 of 37

the Pendente Lite Order by negotiating a payment plan with the City, which Landlord has refused to agree to because it makes Landlord liable for the taxes. Landlord has not adequately explained its opposition given it is liable to the City for such taxes in the first instance as owner of the property. In these circumstances, a money judgment is premature, and the Court will direct the parties to work together on this issue as discussed below.

### C.     *Notice of Default and Yellowstone Injunction*

Given the above, Landlord's Notice of Default must be vacated because it is based on an incorrect Commencement Date (June 2021). Therefore, there is no current Notice that could serve as the basis for termination of the Lease. Therefore, Tenant's Fourth Claim for an Injunction enjoining Landlord from taking any steps to terminate the lease based on the Notice of Default is granted.

However, Landlord's request to vacate the *Yellowstone* injunction to permit declaring default under the Lease is denied without prejudice. As Landlord argues, "[a] motion to vacate or modify a *Yellowstone* injunction 'is addressed to the sound discretion of the court and may be granted upon compelling or changed circumstances that render continuation of the injunction inequitable'" (*255 Butler Assoc., LLC v 255 Butler, LLC*, 208 AD3d 829, 831 [2d Dept 2022] [citations omitted]). Landlord argues that Tenant is no longer willing to cure its default, has disregarded this Court's Pendente Lite Order, and is in breach of the Lease provision requiring it to maintain continuous general liability insurance.

The Court denies this request without prejudice pending a meet and confer (with the Court's assistance if needed) to seek agreement on finalizing a proposed tax payment plan with

---

several times during the oral argument on this motion on May 28, 2024 (*see e.g.*, NYSCEF 247 at 26-28, 32, 36-38, 43, 54, 61-62).

**654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC**                                    **Page 26 of 37**
**Motion No.  008**

26 of 37

the City for the parties' combined benefit and agreement on releasing escrow funds for construction, both of which have been held up by what seem to be unnecessary and unproductive disputes. At this stage, vacating the *Yellowstone* injunction while several open issues remain for resolution is not warranted.

To the extent Landlord raises an issue with Tenant's general liability insurance, that issue was not raised in the Default Notice (*see* NYSCEF 331) nor was it a basis for the *Yellowstone* injunction (*see* NYSCEF 19; NYSCEF 20), nor does it relate to any cause of action or counterclaim before the Court (*see generally* NYSCEF 248, 259).

### D. *Striking the Pleadings*

For similar reasons, the Court declines to grant Landlord's request to Strike Pleadings and Issue an Ejectment Order. "Where a party . . . disobeys a court order and by his conduct frustrates the disclosure scheme provided by the CPLR, dismissal of the pleading is within the broad discretion of the trial court" (*Henry Rosenfeld, Inc. v Bower and Gardner*, 161 AD2d 374, 375 [1st Dept 1990]). Landlord argues that Tenant has disobeyed this Court's Pendente Lite Order by failing to pay Additional Rent owed, it has also failed to abide by the conditions of the order permitting Morrison Cohen, LLP, to withdraw from representation, by failing to deliver any agreement or other evidence of a "payment plan" with the City of New York to resolve outstanding real estate taxes (*see* NYSCEF 294).

As noted, while Tenant has failed to fully comply with this Court's Pendente Lite Order, the record reflects that Tenant was seeking to negotiate a payment plan with the City. Neither of these issues warrant striking the pleadings or the Court ordering ejectment. Instead, the Court has and will continue to resolve this case on the merits unless the remaining areas of dispute can be resolve by settlement.

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No. 008

Page 27 of 37

27 of 37

## II. Breach of Contract Claims

### A. *Breach Relating to Big City Outdoor Lease*

Summary judgment on Tenant's First Claim for Breach of Contract due to the Big City Lease is granted as to *liability only*. Landlord "represented and warranted" that the Property was not subject to any other lease except the Hermès Lease (Lease § 2.4). Landlord breached this representation by not disclosing its pre-existing window signage lease with Big City Outdoors. Although Mr. Ariganello testified that he "informed" Big City Outdoors that its lease was "terminated" in November 2020 upon leasing the premises to Tenant, Landlord's position in the Big City Litigation is that the lease was terminated in December 2023 and that Big City owes rent through that date.

Landlord's reliance on Section 2.5 of the Lease, which provides that Tenant agrees to take property "as is" and subject to "rights of tenants or persons in possession . . . . [and] any state of facts that an accurate survey or personal inspection of the Building . . . would disclose" is unavailing. Section 2.5 does not negate Landlord's representation that no other leases exist except for Hermès. At most, Section 2.5 addresses a situation in which a third-party claims possession, as Big City has, in which case Tenant's rights may be impacted vis-a-vis the third party. However, that does not absolve Landlord of its representation to Tenant in a dispute *between Landlord and Tenant.*

In terms of remedy, the above finding does not warrant the conclusion that Tenant never took possession of the premises, or that the Commencement Date did not occur until after the Big City lease expired in January 2024, or that contract reformation is an appropriate remedy. Big City did not assert any rights regarding the signage agreement until January 2023. The Big City lease was to advertise in the window of one of the three condominium units leased to

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Page 28 of 37
Motion No.  008

28 of 37

Tenant. Thus, at most, Tenant has been partially evicted and "is [] entitled to the difference, if any, between the rent attributable to the portion of the premises from which it was evicted and the actual rental value of that same portion of the premises" (*Appliance Giant, Inc. v Columbia 90 Assoc., LLC*, 8 AD3d 932, 933 [3d Dept 2004]; *Eastside Exhibition Corp. v 210 E. 86th St. Corp.*, 23 AD3d 100, 105 [1st Dept 2005]). Tenant may seek leave to amend its pleadings to seek damages, if any, in connection with this breach of the Lease.

        B.      ***Breach Relating to Construction Issues***

As to Tenant's Fifth Claim for Breach relating to Construction Issues, summary judgment is denied. The Court finds that there are disputed fact issues on Tenant's claim that Landlord breached its obligation to reasonably cooperate with Tenant by: (i) withholding documents requested by the Condominium necessary to review Tenant's mechanical plans prior to authorizing Tenant to file for permits with the NYC DOB; (ii) refusing to appoint Tenant as members of the Condominium Board to authorize them to even submit plans for Condominium review until January 2023; and (iii) failing to disburse Down Payment Funds held in escrow to finance Tenant's build-out.

In particular, the record is unclear as to whether and to what extent Landlord was responsible for the delays, if Tenant failed to provide documentation requested by the Board, whether Landlord had any obligation under the Lease to provide such documentation, and whether Tenant could have obtained the necessary approvals without Landlord's assistance.

As noted, as to the construction funds, Landlord argues that Tenant did not meet the contractual conditions to construction funds being disbursed to reimburse Tenant for the costs of the build-out as required by the Construction Escrow Agreement, including, but not limited to, (i) the submission of a budget and draw schedule for the Project and Improvements, (ii)

**654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC**          **Page 29 of 37**
**Motion No.  008**

29 of 37

Landlord's receipt of "a sworn statement from tenant disclosing the various contracts entered into by the Tenant", (iii) a sworn statement from the architect that the work has been completed, (iv) "paid receipts (including invoices, bills and copies of payments made in connections therewith)", and "estoppel certificates, lien waivers or other similar certifications in form satisfactory to Landlord, in its discretion, showing amounts paid and amounts due to all persons or organizations furnishing labor or materials in connection with the completion of the Improvements" (NYSCEF 338 §§ 3.2-3.4; Response to PSOF ¶27). Fact issues remain as to whether and to what extent Tenant has provided Landlord with the documentation required to warrant release of funds from the construction escrow account. Accordingly, Tenant's motion for summary judgment is denied.

### C. *Breach of Implied Covenant of Good Faith and Fair Dealing*

Tenant's Seventh Cause of Action alleges that "Landlord breached the implied covenant of good faith and fair dealing by depriving Tenant of the full financial benefits contemplated by the Lease, such as the economic bargain of the Fixed Rent Holiday Period which was intended to be the period in which Tenant completed construction of the Premises in order to maximize its revenue from the entirety of the Premises, and whereby Tenant was required to only pay Additional Rent without income from the entirety of the Premises for a period of fifteen months" (SAC ¶170). On this claim, Tenant seeks declaratory judgment: (i) enjoining Defendant from collecting Additional Rent until disbursement of the Down Payment Funds, (ii) tolling the Commencement Dae and Rent Commencement Date until fifteen months from such time as Defendant fulfills its conditions precedents and contractual requirements under the Net Lease, (iii) crediting Plaintiff for all Additional Rent previously paid by Plaintiff under protest, and (iv)

[* 30]

finding Defendant is required to reasonably cooperate with Plaintiff to fulfill the Parties' obligations under the Net Lease.

These allegations are duplicative of the Tenant's Sixth Claim for Breach of Contract. Accordingly, this claim is dismissed as an independent cause of action (*see AEA Middle Mkt. Debt Funding LLC v Marblegate Asset Mgt., LLC*, 214 AD3d 111, 132-33 [1st Dept 2023] ["Where a cause of action for breach of the implied covenant of good faith and fair dealing is based on the same operative facts and seeks the same damages as a cause of action for breach of contract, the good faith claim is duplicative and should be dismissed"]). To the extent Tenant seeks certain declaratory relief (*e.g.*, equitable tolling of the Commencement Date) solely under this implied covenant claim, that request is denied.

Tenant's Eighth Cause of Action asserts that Landlord breached the implied covenant of good faith and fair dealing by improperly refusing to close the transaction unless Tenant signed the Settlement Statement, failing to disburse the construction funds, and by impeding Tenant's construction (*see* SAC ¶185). Tenant's summary judgment motion on this claim is denied.

As to the Settlement Statement, Tenant alleges that "Landlord breached the implied covenant of good faith and fair dealing [in the Lease] by improperly refusing to close the transaction unless Tenant signed the settlement statement. Despite having no right to Additional Rent until January 1, 2024, Landlord improperly required Tenant to sign a settlement statement at Closing releasing to Landlord Additional Rent for the pre-Commencement period of March through December 2020" (*id.*). While Tenant alleges that it "signed the statement under duress" (SAC ¶111), the only allegation supporting the allegation of duress is the fact that Tenant had $17 million of its own money locked up in escrow, which could continue to sit there if Tenant

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No.  008

Page 31 of 37

31 of 37

did not agree to close (*id.*). Tenant has presented no additional evidence to support this claim, and therefore summary judgment in its favor is denied.

As to the remaining portion of this claim relating to the construction funds, while the failure to disburse the construction funds overlaps to some degree with Tenant's Fifth Claim for Breach of Contract, the Court finds that this is a circumstance in which the implied covenant claim may be asserted in the alternative to the Breach of Contract claim (*see URP Maiden Lane LLC v Val. Natl. Bank*, 244 AD3d 509, 510 [1st Dept 2025] [finding that the implied covenant claim "was not duplicative of the breach of contract cause of action because it alleged conduct separate from the breach of contract claim and, in any event, was pleaded in the alternative"]). The live factual issues in this action include whether Landlord's conduct undermined Tenant's ability to commence its construction work thus depriving Tenant of the fruits of the parties' agreement. Whether Tenant will be able to prove its claim and whether any breach committed by Landlord was of an express provision of the Lease or of an implied obligation remains an issue for trial.

### III.    Indemnification

Landlord's Fifth Counterclaim for Breach regarding Liens on Property and Tenant's Second Claim for Indemnification regarding expenses in Big City litigation both seek indemnification pursuant to the Lease. Section 4.2 of the Lease provides that each party agrees to indemnify the other for any loss, including attorney's fees, in connection with or arising from: "(ii) the breach or failure of any representation or warranty expressly made by the Indemnifying Party in this Lease" (Lease § 4.2).

The Court finds that both parties' indemnification claims are granted with respect to liability, with damages to be determined. First, there is no dispute that Tenant allowed liens to be

[* 32]

filed on the property in violation of Section 9.1 of the Lease, which provides that Tenant shall not "suffer or permit" any mechanics or other liens "to be recorded or filed against the Units and/or the Premises." Further, if any such lien has been filed, then Tenant must cause the same to be discharged of record within ninety (90) days after notice of the same (*see* Lease § 9.1). Tenant failed to discharge the Socotec and Nouveau mechanics' liens within the required ninety (90) days and, as a result, both Socotec and Nouveau commenced actions against Defendant to foreclosure on the mechanics' liens (*see* NYSCEF 161, 163). CS Wall incurred legal fees in defending those actions in the amount of $34,804.56 (NYSCEF 313, 314). Tenant does not dispute that CS Wall defended the litigation and incurred legal fees. Instead, it argues that "[t]here is no dispute that all mechanic's liens have been resolved as of the filing of this motion" (NYSCEF 366 at 36). However, the fact that the liens were belatedly discharged does not relieve Tenant of its indemnification obligation under the Lease for expenses incurred prior to the discharge.

Nevertheless, CS Wall's fee application is insufficient. CS Wall only submitted "Statement of Accounts" citing prior invoices, which do not describe the legal work performed, the hours expended, or the hourly rate charged (and do not appear to add up to $34,804.56) (NYSCEF 313, 314). CS Wall may resubmit its fee application at trial with supporting documentation, including the invoices sent to CS Wall, and an attorney affirmation setting forth the reasonable value of the services rendered. Thus, CS Wall's counterclaim is granted as to liability only.

Likewise, Landlord must indemnify Tenant for its litigation expenses in the Big City Litigation, which apparently remain ongoing. Landlord did not oppose this request in its

[* 33]

opposition. Therefore, this claim is granted as to liability, and Tenant may seek its attorney's fees at trial.

The Court has considered the parties' remaining arguments and finds them unavailing. All issues and claims not expressly determined or addressed herein are reserved for trial.

\* \* \*

Accordingly, it is

**ORDERED** that Landlord's Motion for Partial Summary Judgment is **GRANTED IN PART** as follows:

- Summary judgment is granted on Landlord's Fifth Counterclaim for Breach of Contract *on liability only*; Landlord may resubmit a revised application for attorney's fees at trial;

- Summary judgment is granted on Landlord's Sixth Counterclaim for Breach of Contract *on liability only*;

- Landlord's Request to Vacate Yellowstone is denied *without prejudice*; and

- Landlord's request to Strike the Pleadings and Issue an Order of Ejectment is denied;

it is further

**ORDERED** that Tenant's Cross-Motion for Summary Judgment on its Claims and on Landlord's Counterclaims is **GRANTED IN PART** as follows:

*On Tenant's claims*:

- Summary judgment is granted on Tenant's First Claim for Breach of the Big City Lease *on liability only*; Tenant may seek leave to amend its pleadings to seek damages, if any, in connection with this breach of the Lease;

**654992/2021  JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC**
**Motion No.  008**

**Page 34 of 37**

34 of 37

- Summary judgment is granted on Tenant's Second Claim for Indemnification *on liability only*; Tenant may submit an application for attorney's fees at trial;

- Summary judgment is granted in part on Tenant's Third Claim for Declaratory Relief to the extent of the declarations stated below, and is otherwise denied;

- Summary judgment is granted on Tenant's Fourth Claim for an Injunction only insofar as the Landlord cannot terminate the Lease or commence ejectment proceedings based on the current Notice of Default, and is otherwise denied;

- Summary judgment is denied with respect to Tenant's Fifth Claim for Breach of Contract relating to certain Construction Issues;

- Summary judgment is denied with respect to Tenant's Sixth Claim for Breach of Contract;

- Summary judgment is denied with respect to Tenant's Seventh Claim for Breach of the Implied Covenant;

- Summary judgment is denied with respect to Tenant's Eighth Claim for Breach of the Implied Covenant; and

- Tenant's unpled request for reformation is denied;

*On Landlord's Counterclaims*:

- Summary judgment in favor of Tenant is granted in part on Landlord's First Counterclaim for Declaratory Relief to the extent of the declarations stated below;

- Summary judgment in favor of Tenant is denied on Landlord's Second Counterclaim seeking a money judgment as premature as a money judgment will only be issued after trial/full resolution;

**654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC**
**Motion No.  008**

**Page 35 of 37**

- Summary judgment in favor of Tenant is denied on Landlord's Third Counterclaim for damages and expenses;

- Summary judgment in favor of Tenant is denied on Landlord's Fourth Counterclaim for Breach of the Implied Covenant (the remaining counterclaims were addressed above); it is further

**ORDERED** that pursuant to Tenant's Third Claim and Landlord's First Counterclaim, it is **DECLARED** that:

- at all relevant times no default existed under the Amended and Restated Lease, as alleged in the Notice of Default because it is based on an incorrect Commencement Date;

- the Commencement Date under the Lease occurred on December 10, 2020, and the Rent Commencement Date occurred on April 1, 2022;

- the unexecuted Commencement Date Agreement did not "reasonably fix" the Commencement Date and the Rent Commencement Date and is thus invalid;

- Landlord is required to reasonably cooperate with Tenant and fulfill its obligations under the Lease; and

- the Amended and Restated Lease remains in full force and effect.

**IT IS FURTHER ORDERED** that the parties shall appear for a conference on **April 13, 2026 at 10 AM** to discuss resolving the remaining issues, including the specific claims outlined herein, as well as trial scheduling and logistics; the parties are directed to meet and confer prior to the conference to discuss their proposed settlement path, proposed length of trial, and any other logistical issues that they have identified and be prepared to discuss those at the conference; it is further

**654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC**
**Motion No.  008**

**Page 36 of 37**

**ORDERED** that the parties upload a copy of the transcript of oral argument to NYSCEF upon receipt.

This constitutes the Decision and Order of the Court.

20260303130303JMC0HENA53AF87D65644F5DA9795540747A209E

__3/3/2025__
**DATE**

**JOEL M. COHEN, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

654992/2021   JTRE 23 WS (DEL) LLC vs. CS WALL STREET LLC
Motion No.  008

Page 37 of 37

[* 37]